■ In the Matter of MUIDALLAP CORPORATION, Doing Business as THE PALLADIUM, Petitioner, v STATE LIQUOR AUTHORITY OF THE STATE OF NEW YORK, Respondent.—In this CPLR article 78 proceeding transferred to this court by order of the Supreme Court, New York County (Alfred M. Ascione, J.), entered on or about February 8, 1988, the determination of the respondent State Liquor Authority, dated January 6, 1988, which found petitioner Muidallap Corporation guilty of permitting illegal gambling to occur on its premises and of permitting the premises to become disorderly by suffering the presence of gambling devices on its premises, and which imposed as penalty a 10-day suspension of petitioner's liquor license and a $1,000 bond forfeiture unanimously annulled, without costs.

The facts adduced at the hearing held before Administrative Law Judge Werner Loeb are not disputed. The single witness produced by respondent Authority, Authority Investigator Harry Cardona, testified that on the night of October 8, 1986, he and another investigator attended a benefit for the Actor's Studio held on petitioner licensee's premises. Cardona was escorted to the second floor of the premises by a Mr. Garelik and a Mr. Miskit, both of whom were reportedly employed by petitioner. On entering the second floor, Cardona observed several "gambling devices". These included baccarat, black-

jack and craps tables, and two wheels of fortune. He did not, however, during the entire 1½-hour period he remained on the premises notice any of these "devices" used for gambling. Although some of the attendees had chips, Cardona never saw the chips used to place a bet.

Cardona's direct observations were supplemented by what he was told by Garelik and Miskit. They indicated that the guests had each paid $250 in advance to attend the benefit. The price of admission included a world premiere screening of the film "The Color of Money" followed by a party at The Palladium with a full dinner and an open bar. The organizers of the party dubbed it "Atlantic City Night". No money was collected at The Palladium. Those in attendance had been given chips to play at the aforementioned "gambling devices" in order to determine which of them would be awarded certain prizes. The two prizes were a pool stick used in the film "The Hustler" and a "sweaty tee shirt" worn by the actor Tom Cruise in his lead role in "The Color of Money".

About one month after the benefit, the following charges were made by respondent against The Palladium in connection with what transpired at the benefit:

"1. That on October 8, 1986, the licensee suffered or permitted gambling on the licensed premises in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.

"2. That the licensee violated Section 106, subd. 6 of the Alcoholic Beverage Control Law in that it suffered or permitted the licensed premises to become disorderly on October 8, 1986 by suffering or permitting gambling devices to be kept on the licensed premises."

Upon the above-described evidence, Administrative Law Judge Loeb sustained the first of these charges, apparently finding that Cardona's testimony as to what he observed coupled with his account of what he had been told by Garelik and Miskit was sufficient to support the inference that gambling had occurred. Judge Loeb acknowledged that much of Cardona's testimony had been hearsay, but held that the hearsay was admissible in the context of an administrative proceeding. As to the second charge, however, Judge Loeb, relying upon this court's decision in *Matter of Plato's Cave Corp. v State Liq. Auth.* (115 AD2d 426, *affd* 68 NY2d 791), held that the mere presence of "gambling devices" on the licensee's premises was not sufficient to establish that the licensee had permitted the premises to become disorderly.

The matter was considered by respondent Authority's five-

member board in December 1987. At the time of its deliberations the board had before it a memorandum by Barbara J. Lord, Secretary to the State Liquor Authority. The memorandum, which had not been divulged to petitioner or its counsel, recommended that Judge Loeb's findings as to the first of the charges be sustained, but that his findings as to the second of the charges be reversed. Ms. Lord noted in pertinent part: "While *Plato's Cave* can be construed as precedent for not sustaining a charge of disorderly premises Sec. 106 (6), due to the mere possession of a Joker Poker machine on the licensed premises because of the Appellate Division decision, and the failure of the Authority to appeal that decision, it is submitted that the instant case is distinguishable and that the decision in *Plato's Cave* is not precedent for a determination of the facts herein."

The board followed Ms. Lord's recommendation, voting by a 3-to-2 margin to reverse the Administrative Law Judge's disposition of the second charge. It thereupon ordered that petitioner's liquor license be suspended for 10 days and imposed a $1,000 bond forfeiture. The dissenting members of the board voted to give petitioner the option of electing either the suspension or the bond forfeiture.

The general question to be addressed in this article 78 proceeding is, of course, whether on the entire record it can be said that there was substantial evidence to support the administrative determination at issue. Even while cognizant of our very limited scope of review, substantial evidence having been defined as any evidence from which the ultimate facts might reasonably be inferred *(Matter of Stork Rest. v Boland,* 282 NY 256; *Matter of Berenhaus v Ward,* 70 NY2d 436), it is clear that respondent has not proven either of the charges against petitioner.

In determining whether petitioner has permitted gambling on its premises in violation of section 106 (6) of the Alcoholic Beverage Control Law, the applicable definition of "gambling" is that found in Penal Law § 225.00 *(Matter of Plato's Cave Corp. v State Liq. Auth., supra,* 68 NY2d, at 793). Penal Law § 225.00 (2) states in relevant part, "[a] person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." Although we agree with respondent that movie memorabilia such as the prizes awarded at the Actor's Studio benefit are things of value within the

meaning of the statute, we think it plain that nothing of value was placed at risk by those who competed for the prizes. There can be no question that those who paid the $250 price of admission did so primarily to support the Actor's Studio, and secondarily to gain entry to the motion picture world premiere and the festivities which followed. Nowhere in the promotional literature contained in the record, or indeed in the hearing testimony, is there a scintilla of evidence indicating that at the time the attendees purchased their tickets they were aware that there would be prizes awarded at the benefit party, or that the winners of these prizes would be selected by chance procedures similar to those used in certain gambling games. Obviously, when the benefit guests used the chips they had been given to compete for the prizes, they risked nothing. They had already parted with their money without any expectation of possible pecuniary return. Under these circumstances where there is no evidence that any additional sums were expended in exchange for the chips, the guests cannot be said to have wagered anything upon winning a prize. The reality is that although the mechanism for selecting the prize winners was borrowed from the ambience of the casino, as was the general theme of the evening, no gambling occurred.

As for the second charge, it is quite clear that there was absolutely no evidence that petitioner had permitted its premises to become disorderly. Thus, even if the various "gambling devices" observed by Cardona had been used for gambling, which they were not, the second charge would fail. As we noted in *Plato's Cave (supra,* 115 AD2d, at 428), and as Judge Loeb commendably recognized, "[a] finding of guilt for gambling does not ipso facto establish evidence of permitting the premises to become disorderly" *(see also, Matter of Penoke Rest. v State Liq. Auth.,* 121 AD2d 921, 923; *O'Carroll Rest. Corp. v New York State Liq. Auth.,* 125 AD2d 212, 213). What is more, where as here there is not even a sustainable allegation of gambling, there can be no viable claim that the presence of "gambling devices" caused the premises to become disorderly. Mere possession of a "gambling device" does not constitute disorderly conduct as that offense is defined in Penal Law § 240.20. *(Matter of Plato's Cave Corp. v State Liq. Auth., supra,* at 428.)

Although respondent may not like it, it is bound by the applicable decisions of this court. Neither Ms. Lord in her above-excerpted memorandum, nor respondent in its brief upon the present appeal even begins satisfactorily to explain why the holding in *Plato's Cave (supra)* should not control in

the present matter. If respondent disagreed with the holding in *Plato's Cave* it should have appealed. Not having done so it was prospectively bound by the precedent it left unchallenged and which has since been consistently applied by this court (*see, Matter of Penoke Rest. v State Liq. Auth., supra; O'Carroll Rest. Corp. v New York State Liq. Auth., supra*).

As disturbing as respondent's apparent disregard for appellate precedent is its inattention to basic norms of procedural fairness. The Lord memorandum, submitted after the proceedings before the Administrative Law Judge had been completed and without notice to petitioner, was not properly part of the record (*see,* 9 NYCRR 54.5) and should not have been considered by the board which we note adopted the memorandum's recommendations almost verbatim. At the very least, if the memorandum was to be considered, petitioner should have had an opportunity to reply. While we do not find it necessary to base our ruling upon petitioner's due process claims, having already set forth the substantive deficiencies requiring annulment of respondent's determination, it is appropriate to note our strong disapproval of the procedures employed by respondent in this case.

Were we not annulling we would remand for reconsideration of the penalty imposed. Petitioner has an absolutely unblemished record of compliance with the laws and regulations administered by respondent. The event at which the presently alleged violations are said to have occurred posed absolutely no danger to the public health, safety or welfare. Indeed, the festivities were conducted without any adverse incident for an eminently worthy cause; the Actor's Studio has trained many of this country's most esteemed practitioners of theater and screen arts. We note also that the record shows that respondent knew of the benefit well in advance and registered no objection thereto. Instead, it sent two investigators to ferret out violations and has since pursued the matter with a tenacity in no way justified by the very thin evidence it possessed. Manifestly, in these circumstances the penalty imposed by the Authority, a 10-day suspension of petitioner's liquor license and a $1,000 bond forfeiture, which penalty could deprive petitioner of some $300,000 in revenues and possibly force it out of business, was wholly disproportionate and inappropriate. (*See, Matter of Ansbro v McGuire,* 49 NY2d 872, 874; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 233.) Concur—Murphy, P. J., Milonas, Rosenberger and Smith, JJ.