OPINION OF THE COURT
Per Curiam.
Petitioner has served as Surrogate of Bronx County since January 1, 1973. It is uncontested that prior to the disclosure of the events that are the subject of this proceeding, he was a respected member of the judiciary of our State. The evidence before us indicates, however, that his removal from office is warranted because of his misconduct between August 3, 1985 and December 31, 1985 and his subsequent lack of candor with the State Commission on Judicial Conduct.
On June 20, 1986, at respondent’s behest, respondent’s administrator issued a formal complaint charging petitioner with eight separate acts of judicial misconduct during the period from August 3, 1985 to December 31, 1985. Each of the allegations involved acts by the Judge motivated by animus toward a former law assistant because of a personal and *214 sexual relationship between them.* Petitioner admitted that the relationship existed while the law assistant worked for him, but denied the material portions of the allegations of misconduct. The matter was referred for a hearing.
. The evidence showed that, for a period of several years, petitioner had engaged in an extramarital affair with one of his law assistants. In addition to sustaining all of the charges in the formal complaint and finding that petitioner lacked candor as to nearly all of the material facts in the proceeding, the Referee found that petitioner had misused his position throughout the entire course of the affair to prolong the relationship. The Commission determined that petitioner engaged in a course of misconduct throughout the duration of *215 the relationship and lacked candor at the hearing and that the sanction of removal was appropriate. We review the determination upon petitioner’s request (Judiciary Law § 44 [7], [9]).
Upon full factual review of the evidence adduced before the Referee (NY Const, art VI, § 22 [d]; Judiciary Law § 44 [9]), we conclude that, during the period of August 3, 1985 to December 31, 1985, petitioner misused his position as Surrogate of Bronx County by making administrative and personnel decisions, taking official actions, and making implicit and explicit threats to court officials and others in order to prolong a sexual relationship with a law assistant and, later, to exact personal vengeance when she refused to continue their affair. On August 3, 1985, petitioner fired the law assistant based on events in their personal relationship. Shortly thereafter, he emptied her office desk and left the contents on the doorstep of her residence. At that time, petitioner made more than 60 telephone calls — leaving annoying and obscéne messages — but the law assistant apparently had resolved neither to return his calls nor to pursue the relationship. In a desperate effort to reach her, he falsely identified himself to a doorman as her attorney on one occasion and on another threatened to speak to her boyfriend’s parents if the boyfriend would not allow petitioner to speak to her. Petitioner confronted the boyfriend, accused him of "harboring” the law assistant and threatened to speak to his employer, the Bronx County District Attorney, to have him fired if he did not reveal the whereabouts of the law assistant. At the end of August or in early September 1985, petitioner called the Deputy Chief Administrative Judge and asked him to view unfavorably any application that the law assistant might submit for a position in the court system. Finally, in early December 1985, petitioner met with the law assistant’s new employer — her boyfriend’s father. The father was an attorney, a social acquaintance of petitioner and the husband of an employee in petitioner’s court. Petitioner remonstrated with the father because he had hired the law assistant without first consulting him. This highly improper conduct was compounded further by petitioner’s lack of candor during the course of these proceedings with respect to both the motivation underlying his actions just described, and many background incidents introduced by either petitioner or the Commission, including testimony that was evasive, incredible and false.
We conclude that this conduct constituted inexcusable viola *216 tions of sections 100.1 and 100.2 of the Rules Governing Judicial Conduct (22 NYCRR) and Canons 1 and 2 of the Code of Judicial Conduct. Petitioner’s repeated misuse of his judicial powers and his subsequent failure to be candid in this proceeding were in conflict with the standards of integrity and propriety required of members of the judiciary, and inimical to his role as a Judge (Code of Judicial Conduct Canon 1; see, Matter of Myers, 67 NY2d 550, 554). By allowing his personal relationships to influence both his judgment and the administration of the court over which he presides he could not help but impair public confidence in his integrity and impartiality (Code of Judicial Conduct Canon 2; Matter of Sims, 61 NY2d 349, 359). The effectiveness of the judicial system is dependent upon the public’s trust and violations such as these which undermine that trust are so contrary to the ethical obligations required of Judges in conducting their personal and judicial duties that removal is essential (see, Matter of Aldrich v State Commn. on Judicial Conduct, 58 NY2d 279, 283; Matter of Shilling, 51 NY2d 397, 402; Matter of Kuehnel, 49 NY2d 465, 469).
 We draw these conclusions, however, without regard to any misconduct that may have occurred prior to the time period described in the formal complaint served upon petitioner. While the Referee may have allowed relevant evidence of events predating the alleged misconduct in order to clarify or to provide background for the formal charges, the complaint did not charge petitioner with misconduct prior to August 1985. Accordingly, it was unnecessary and indeed improper for the Commission to include in its determination extensive findings of fact and legal conclusions based on uncharged incidents — often of a sensational nature — which preceded the dates covered by the complaint or to consider such conduct in its determination of sanction. Indeed, the Commission’s responsibility to safeguard the public’s trust in the judiciary by both shielding innocent Judges from unjust charges and exposing and disciplining those who have abused their office is not fulfilled where uncharged conduct forms the basis of its published determination. Due process requires that petitioner not be deprived in this proceeding of his interest in continuing as a Judge because of the uncharged misdeeds (Matter of Murray v Murphy, 24 NY2d 150, 157; see, Matter of Seiffert, 65 NY2d 278, 280). Because of our power to review the facts in cases involving judicial misconduct (NY Const, art VI, § 22 [d]; Judiciary Law § 44 [9]), however, a new hearing is *217 unnecessary. We conclude that the acts that were described in the formal complaint and proven at the hearing constitute sufficient cause for removal.
For the foregoing reasons, the determined sanction of removal is accepted, without costs.
Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur in Per Curiam opinion; Chief Judge Wachtler and Judge Bellacosa taking no part.
Determined sanction accepted, without costs, and Bertram R. Gelfand is removed from his office of Surrogate, Bronx County, effective immediately.

 The relevant portions of the complaint are as follows:
"4. From August 3, 1985, through December 31, 1985, in connection with his personal relationship with I. G., a law assistant on his staff from March 1978 to May 1984 and from September 1984 to September 10, 1985, respondent engaged in a course of misconduct, to wit:
"(a) on August 3, 1985, respondent told Ms. G. she was 'off the payroll’ as of August 2, 1985, a statement made for personal reasons, unrelated to her official duties;
"(b) on August 3, 1985, respondent emptied Ms. G.’s office of her personal effects and delivered them in boxes to Ms. G.’s home for personal reasons, unrelated to her official duties;
"(c) on or about August 3, 1985, to on or about September 17, 1985, respondent left obscene, annoying and otherwise offensive messages on Ms. G.’s telephone answering machine;
"(d) on or about August 4, 1985, respondent, in attempting to see Ms. G. at an apartment building in Riverdale to discuss personal matters, falsely identified himself to the doorman of that building as 'M. L.’, who at the time was Ms. G.’s attorney;
"(e) in August 1985, respondent demanded to meet with, and then confronted, S. K. about his relationship with Ms. G., told Mr. K. that he knew the Bronx County District Attorney, who was Mr. K.’s employer, and threatened to speak to the District Attorney about Mr. K.’s conduct;
"(f) in August 1985, respondent left offensive messages on S. K.’s telephone answering machine, and in one such message respondent threatened to speak to Mr. K.’s mother, who then served as Deputy Public Administrator in Bronx County, or to Mr. K.’s father, to obtain S. K.’s permission for respondent to speak to Ms. G.;
"(g) in or about late August or early September 1985, motivated by animus toward Ms. G. arising out of their personal relationship, respondent requested that New York State’s Deputy Chief Administrative Judge, Milton Williams, view unfavorably any application for employment in the courts that Ms. G. might submit; and
"(h) in early December 1985, respondent met with E. K. and M. K., of the law firm of K. & K., and indicated his displeasure at their having employed Ms. G. as an associate of their firm without first consulting him.”