OPINION OF THE COURT
Per Curiam.
In this proceeding we are called upon to review a determination of the State Commission on Judicial Conduct removing from office the petitioner, a Judge of the Suffolk County District Court, for certain acts of judicial misconduct. After having reviewed all of the evidence before the Commission, we conclude that censure, rather than removal, is the appropriate sanction.
On May 10, 1988, the Commission served a complaint upon petitioner containing four charges of misconduct. The charges alleged that in October and November 1987, petitioner interceded on behalf of the defendants in two criminal proceedings, lent and appeared to lend the prestige of his judicial office to advance their private interests, and failed to disqualify himself from one of the proceedings. Petitioner was specifically *367 charged with having initiated several ex parte communications with the prosecutors, in People v Matthew Begg, and with the Judge and prosecutor in People v John Hopkins Jr., for the purpose of seeking lenient treatment for the defendants (charges 1 & 3). Petitioner was also charged with giving testimony which was lacking in candor in 15 specified instances during the Commission’s investigation (charges 2 & 4). In its determination dated April 3, 1989, the Commission sustained charges 1 and 3 in toto, charge 2 in part, and dismissed charge 4 concluding that petitioner violated sections 100.1, 100.2, 100.3 (a) (1), 100.3 (a) (4), 100.3 (c) (1) and 100.3 (c) (1) (i) of the Rules Governing Judicial Conduct (22 NYCRR), and Canons 1, 2, 3A (1), 3A (4), 3C (1) and 3C (1) (a) of the Code of Judicial Conduct. We now review the determination upon petitioner’s request (Judiciary Law § 44 [7], [9]).
I.
The Hopkins Case
Petitioner received a call from John Hopkins Sr., a close family friend, who informed petitioner that Hopkins’ son, John Jr., had been arrested for armed robbery. Petitioner had known the Hopkins family for approximately 12 years and was aware that the family had recently suffered a series of tragedies. Specifically, the overdose death of one son, and the death, during childbirth, of another son’s paramour, leaving the senior Hopkins to care for a two year old, and a pair of infant twins, one of whom was born severely brain damaged. Petitioner informed Hopkins that he would be in the courthouse when Hopkins Jr. would be arraigned.
Prior to arraignment, petitioner approached the Assistant District Attorney (A.D.A.) who was handling the case, and told him that he had represented the defendant in the past and that the defendant had a good record of appearing in court as scheduled. Petitioner also informed the A.D.A. of the recent tragedies that had befallen the defendant’s family. Petitioner then stopped at the chambers of the Judge assigned to the case, and informed the Judge of the same facts and circumstances.
The Begg Case
Petitioner, a former New York City police officer, attended a reunion of officers from his former precinct. At the reunion, one of petitioner’s friends told petitioner that the son of *368 another retired officer named Begg had a "problem” of unspecified nature in the Suffolk County courts. Petitioner subsequently discovered that the Begg case, which involved criminal trespass, had been assigned to him.
When People v Begg appeared on petitioner’s docket sheet, petitioner summoned the A.D.A. into his chambers, and inquired as to why he was not offering to dispose of this minor trespass case with an adjournment in contemplation of dismissal (ACOD). The A.D.A. explained that an ACOD disposition would contravene his office’s policy because there had been repeated problems with youths on the property in question. Petitioner then summoned the A.D.A.’s supervisor, disclosed to both prosecutors that he would like an ACOD in this case because the defendant’s father was a police officer with whom petitioner had once worked, and stated that an ACOD would be "appreciated.” When the supervisor informed petitioner that the ACOD would not be possible, petitioner responded that that was okay. The three then returned to the courtroom. Even though the case was scheduled for trial before another Judge, petitioner did not disqualify himself from the case, nor disclose on the record that he had had a conversation with a friend concerning the case.
II.
Initially we note that we are empowered to "review the commission’s findings of fact and conclusions of law” as well as to "impose a less or more severe sanction” than imposed by the Commission (NY Const, art VI, § 22 [d]; Matter of Spector, 47 NY2d 462). Upon full factual review of the evidence adduced before the Referee (NY Const, art VI, § 22 [d]; Judiciary Law §44 [9]), we find the allegations contained in charges 1 and 3 sustained by the evidence. We also agree that charge 4 should be dismissed in toto. We conclude, however, that charge 2 should also be dismissed in toto since the evidence adduced by the Commission fails to sustain a lack of candor charge.
Petitioner acted improperly in both the Hopkins and Begg cases because he lent and appeared to lend the prestige of his office to advance the respective defendant’s private interests. Although petitioner was initially charged with 10 specified instances of lack of candor surrounding his discussions with both the A.D.A. and the arraigning Judge in the Hopkins case, the Commission sustained only a part of one specification of *369 that charge finding petitioner to be "evasive and less than forthcoming” in failing to admit that one of the motivations underlying his discussions with the Judge and prosecutor was to have a relatively low bail imposed on Hopkins. We disagree with this conclusion.
Importantly, neither the Commission nor the Referee made any finding that petitioner discussed the amount of bail with either the A.D.A. or the arraigning Judge. In addition, there is no other independent, objective evidence indicating that petitioner’s statement of his intentions was false. There exists merely a disagreement concerning petitioner’s intent or purpose — whether petitioner’s goal was simply to provide information or to cast favor on defendant as a bail risk. While the fact that petitioner discussed background information with the arraigning Judge and the A.D.A. resulted in the objective appearance that he intended to influence the bail disposition, we cannot conclude, solely on the basis of the fact that the discussions occurred, that petitioner dissembled at the hearing when he refused to admit that his subjective intention was to influence the bail disposition (but see, Matter of Gelfand, 70 NY2d 211, 215 [petitioner lacked candor as to both motivations and many background incidents]; Matter of McGee, Commn on Jud Conduct, Apr. 12, 1984 [petitioner’s claim that he intended only to ascertain amount of bail rather than recommend low bail or release belied by objective proof where both arraigning Judge and prosecutor testified otherwise]).
Finally, we agree with the Referee’s finding, adopted by the Commission, that the remaining nine instances of alleged lack of candor in charge 2, and the five alleged instances in charge 4, are nothing more than a mere lack of recall on the part of petitioner. Thus charge 4 was rightly dismissed. In addition, we note that minor discrepancies in factual testimony, which may result from an honest difference in recollection, do not necessarily constitute a lack of candor.
III.
Although we find that the record does support a finding of misconduct, we cannot agree with the Commission’s conclusion that petitioner’s misconduct warrants the sanction of removal. We have repeatedly noted that removal is the ultimate sanction and should be imposed only in the event of truly egregious circumstances (Matter of Steinberg, 51 NY2d 74, 83; see, Matter of Cunningham, 57 NY2d 270, 275). Indeed, *370 removal is not warranted for conduct that amounts simply to poor judgment or even extremely poor judgment (Matter of Shilling, 51 NY2d 397, 403, citing Matter of Steinberg, supra, at 81; see, Matter of Cunningham, supra). Although petitioner’s conduct amounts to extremely poor judgment, removal is not appropriate under the circumstances of this case.
While we do not condone petitioner’s conduct, we do note that his involvement in the Hopkins matter was motivated by his sympathy for the plight of the Hopkins family, and that petitioner sought only to help his friends through another emotional trauma. Petitioner was not motivated by personal gain, and totally absent from his conduct was any element of venality, selfish or dishonorable purpose (see, Matter of Lonschein, 50 NY2d 569, 573). While no similar mitigating factors inhere in petitioner’s actions in the Begg case, there likewise are no aggravating factors and thus a sufficient basis for removal is lacking (compare, Matter of Edwards, 67 NY2d 153; Matter of Dier, 48 NY2d 874; Matter of Bulger, 48 NY2d 32; Matter of Dixon, 47 NY2d 523; Matter of McM. Wright, Commn on Jud Conduct, June 20, 1988; Matter of Watson, Commn on Jud Conduct, Nov. 17, 1988; Matter of McGee, supra; Matter of De Luca, Commn on Jud Conduct, July 2, 1984; with, Matter of Conti, 70 NY2d 416; Matter of Myers, 67 NY2d 550; Matter of Seiffert, 65 NY2d 278; Matter of Reedy, 64 NY2d 299).
As justification for removal, the Commission relied on petitioner’s alleged lack of candor in the Hopkins investigation. In addition to disagreeing with the Commission’s conclusion that petitioner lacked candor, we find the Commission’s reliance on this factor, in the circumstances presented, particularly troubling. In prior cases, we have accepted the use of this factor as a reason for the severest penalty where the Judge who was to be sanctioned gave patently false explanations to the Commission despite contrary objective proof (see, Matter of Conti, supra, at 418-419; Matter of Gelfand, supra, at 215; cf., Matter of Levine, 74 NY2d 294 [falsely denied to F.B.I. investigators ability to recall subject matter of a conversation]). Nonetheless, we do not condone "lack of candor” as an aggravating factor if it unfairly deprives an investigated Judge of the opportunity to advance a legitimate defense.
Judges facing misconduct investigations are in the unenviable position of having to choose between speaking with Commission representatives and refusing to speak. If they choose *371 the latter course, they risk being charged with "failure to cooperate” as an aggravating factor for the imposed sanction (see, e.g., Matter of Cooley, 53 NY2d 64). On the other hand, if they cooperate by speaking to Commission investigators or testifying at their own hearings, they run the risk of provoking "lack of candor” charges based upon inadvertent factual misstatements, testimonial inconsistencies or even poor judgment in responding to searching, unanticipated questions. If a Judge has acted with extremely poor judgment but not necessarily with a particular subjective intention which the Commission would like to attribute to him or her, the Judge can either admit an intention that he or she did not possess, or truthfully deny the intention and yet face an additional charge of lack of candor. This result is both undesirable and unnecessary. While a Judge’s dishonesty or evasiveness before Commission investigators is not to be condoned, the use of a Judge’s "lack of candor” as an aggravating circumstance should be approached cautiously to minimize the risk that the investigative process itself will be used to generate more serious sanctions.
Accordingly, the determined sanction should be rejected, without costs, and the sanction of censure imposed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion.
Determined sanction rejected, etc.