■ WHITBREAD-NOLAN, INC., et al., Petitioners, v GAIL S. SHAFFER, as Secretary of State of the State of New York, Respondent.—Petition pursuant to CPLR article 78, transferred to this court by order of the Supreme Court, New York County (Diane A. Lebedeff, J.), entered on August 11, 1990, challenging a determination, dated April 3, 1990, which found that petitioners had demonstrated incompetency as real estate brokers, revoked their real estate licenses and denied the application of Agnes F. Nolan for a license as a representative broker of Whitbread-Nolan of New York, Inc., is unanimously granted and the determination is annulled, on the law, without costs or disbursements.

Petitioner Whitbread-Nolan, Inc., which is currently the subject of a Federal bankruptcy reorganization, was a real estate brokerage firm owned by petitioners Agnes F. and Richard E. Nolan. Although all three are licensed by respondent as real estate brokers, Whitbread-Nolan was compelled to cease operations as a result of its severe financial difficulties. It was largely due to these problems that an administrative proceeding was commenced in August of 1987 as a result of complaints by employees and others of having received dishonored checks from the company. The matter was resolved in May of 1988 by a settlement agreement under which petitioners were to refrain from issuing postdated checks or checks for which there were insufficient funds. Petitioners' counsel thereafter made repeated demands for payment of its fee, so Agnes Nolan finally issued a postdated company check that was ultimately dishonored. Since the check written to the law firm was returned subsequent to the settlement agreement, the firm obtained a default judgment for the amount owed and filed a complaint with respondent. Richard Nolan eventually satisfied the judgment out of his own personal funds. In September of 1989, following an investigation into counsel's allegations, respondent brought charges against petitioners, as well as another broker, Ann Stolz, for violating the terms of the settlement agreement by issuing a postdated check for which there were insufficient funds.

It is significant that while the specifications provided that "[t]he respondents, AGNES F. NOLAN, RICHARD E. NOLAN, ANN A. STOLZ and WHITBREAD NOLAN, INC., have issued bad checks in violation of the public policy stated by Article 190 of the Penal Law", the only check actually mentioned therein was the one made out to the law firm. The complaint also accused petitioners of having failed to comply with judgments against them and of being untrustworthy and incompetent pursuant to section 441-c of the Real Property Law. At the ensuing hearing, the charges against Ann Stolz were dismissed, evidently because she never had any authority to write checks. Petitioners' former attorney was then called to give evidence with respect to the firm's check. In addition, respondent submitted a letter from Stolz's attorney to the effect that petitioners had given her numerous checks that were later dishonored. Stolz, who had left Whitbread-Nolan in May of 1988, confirmed the accuracy of the letter's contents. Moreover, Richard Nolan testified that he was not involved in the operation of the business, and Agnes Nolan asserted that, except for the check to the firm, issued only in response to counsel's persistence, she had been in compliance with the settlement agreement. Agnes Nolan conceded that checks may have been given to Stolz when there were insufficient funds to cover them but, according to Nolan, only after Stolz had insisted on them and promised to retain them before making any deposits. On rebuttal, Stolz stated that after the date of the settlement agreement, she had received checks that were dishonored.

The Hearing Judge, in revoking petitioners' brokerage license, concluded that since the check had been issued to the law firm only upon counsel's "repeated insistence", they could be considered to have been acting on the advice of counsel. However, he found no similar mitigating circumstances surrounding the provision of bad checks to Stolz or other employees, and this constituted a clear violation of the settlement agreement. He also ruled that the pending bankruptcy proceeding prevented petitioners from satisfying the judgments against them so that they had not been shown to have been untrustworthy and incompetent on that ground. Consequently, the only basis for the revocation of petitioners' licenses was the evidence concerning the improper checks given to Stolz and other employees notwithstanding the total lack of any prior notice as to any checks other than the one issued to the law firm. Yet, "[i]t is axiomatic that due process precludes the deprivation of a person's substantial rights in an administra-

tive proceeding because of uncharged misconduct * * * and it necessarily follows, therefore, that a respondent in such a proceeding is entitled to fair notice of the charges against him or her so that he or she may prepare and present an adequate defense and thereby have an opportunity to be heard" *(Matter of Block v Ambach,* 73 NY2d 323, 332; *see also, Matter of Gelfand,* 70 NY2d 211, *rearg denied* 70 NY2d 747, *cert denied* 484 US 977).

In that connection, the fact that the charges allege that petitioners issued bad checks did not, under the circumstances herein, furnish notice that any check other than the one given to the law firm was in question. Indeed, the checks made out to Stolz or any other employee were never mentioned prior to the hearing nor were they documented in any manner, and petitioners were not required to assert surprise or prejudice to claim lack of notice. Since petitioners had no way of knowing in advance that the Hearing Judge might predicate his determination on checks issued to Stolz, there was no reason to object to her testimony or even to cross-examine her. Stolz's testimony simply did not relate to the law firm's check, which was supposedly the subject of the administrative proceeding. In fact, petitioners did not dispute that they owed money to Stolz. The Court of Appeals has held that even where a party is aware that a certain matter is involved and that it has been fully litigated at the hearing, prejudice will be presumed *(Matter of Murray v Murphy,* 24 NY2d 150). Thus, "[t]he first fundamental of due process is notice of the charges made. This principle equally applies to an administrative proceeding for even in that forum no person may lose substantial rights because of wrongdoing shown by the evidence, but not charged" *(supra,* at 157). In fact, prejudice was created by the mere fact that if petitioners had known that the Stolz checks would be so crucial to the Administrative Judge's decision, they might have approached the hearing differently. Accordingly, respondent's determination must be annulled. Concur—Sullivan, J. P., Milonas, Rosenberger, Ellerin and Kassal, JJ.