OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a former Judge of County Court, Suffolk County,
 
 [1]
 
 initiated this proceeding to review a determination of the State Commission on Judicial Conduct that he should be removed from office
 
 (see,
 
 Judiciary Law §44 [7]). Although conceding that he engaged in sanctionable misconduct, peti; tioner contends that removal is unwarranted and that censure is more appropriate. Petitioner also argues that the Commission improperly charged a violation of the lawyer’s Code of Professional Responsibility. While petitioner is correct that he
 
 *570
 
 should not have been formally charged under the Code of Professional Responsibility, in the exercise of our de novo review powers we disregard that technical defect and accept the determined sanction.
 

 Petitioner’s mother, Carmela Mazzei, lived in petitioner’s home for several years until her death in April 1989. Around that time, petitioner received at his home a "pre-approved” application for a Chemical Bank Visa Gold card, with a $5,000 credit limit, addressed to Mrs. Mazzei. After Mrs. Mazzei died, petitioner completed the application in his mother’s name, simulated her signature, and requested an "authorized user’s” card for her son. Chemical received the application after expiration of the offer, and no credit card was issued at that time.
 

 Later in 1989 Chemical sent to Carmela Mazzei a second preapproved Visa credit card application. Petitioner again filled out the form, forged his deceased mother’s signature, and requested an authorized user’s card for himself. As completed by petitioner, this application, like the previous one, contained a number of additional misstatements: (i) Mrs. Mazzei’s year of birth was listed as 1909 when in fact she would have been 10 years older; (ii) the stated income included Social Security payments when in fact they had terminated; (iii) Mrs. Mazzei’s employment was listed as "Retired” when in fact she was dead.
 

 On December 4, Chemical opened a Visa credit card account in Mrs. Mazzei’s name and issued two cards: one for her, and another, bearing petitioner’s name, as an authorized user of the account. Petitioner placed his mother’s card in a desk drawer and signed the back of his own card.
 

 Petitioner first used his card a week later at an Atlantic City casino, obtaining $2,000 from a cash machine. Petitioner’s attempts to obtain another $2,000 that evening were thwarted when Chemical’s computer, and then a supervisor in the bank’s fraud prevention department, froze the account pending verification of the user.
 

 Petitioner called the bank on several occasions to inquire about the account, stating that Mrs. Mazzei wanted to use her card, but that she should not be contacted, to avoid upsetting her. Chemical’s investigation revealed that Mrs. Mazzei’s Social Security number had been used in connection with a claim for death benefits, and when confronted with that fact, petitioner suggested that his mother mistakenly supplied his
 
 *571
 
 deceased father’s Social Security number. Petitioner later admitted that his mother had died, and returned her unsigned card with full payment of the account’s outstanding balance.
 

 The Commission on Judicial Conduct served a written complaint upon petitioner containing a single charge of misconduct.
 
 [2]
 
 The complaint cited violations of 22 NYCRR 100.1 (Judges must observe high standards of conduct to preserve integrity and independence of judiciary); 22 NYCRR 100.2 (a) (Judges shall respect and comply with law and conduct themselves at all times in a manner that promotes public confidence in integrity and impartiality of judiciary); the similarly-worded counterparts in the Code of Judicial Conduct (Canons 1, 2 [a]); and DR 1-102 (A) (4) of the Code of Professional Responsibility (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation).
 

 At the hearing on the complaint
 
 (see,
 
 Judiciary Law § 44 [4]), petitioner’s defense focused on his motivation for obtaining the credit cards. According to petitioner’s evidence and argument, in 1989 he was estranged from his wife due in part to disputes over financial matters. Knowing that his wife would not open mail addressed to Carmela Mazzei, petitioner sought the account to hide his spending from his wife. In essence, he intended to deceive his wife, not Chemical.
 

 The Referee issued a report sustaining the charge, and the parties cross-moved before the Commission to confirm the report, differing only as to the appropriate sanction. The Commission, by an 8 to 1 vote, determined that removal was warranted. The dissenting member argued for censure, noting that petitioner’s misconduct was removed from his judicial duties and that petitioner’s motive — to obtain a credit card without his spouse’s knowledge — is not as serious as an attempt to defraud the bank of funds. Petitioner sought review in this Court, and we accept the determined sanction.
 

 Judges personify the justice system upon which the public relies to resolve all manner of controversy, civil and criminal. A society that empowers Judges to decide the fate of human beings and the disposition of property has the right to insist
 
 *572
 
 upon the highest level of judicial honesty and integrity. A Judge’s conduct that departs from this high standard erodes the public confidence in our justice system so vital to its effective functioning.
 

 We have often said that removal, the ultimate sanction, should not be imposed for misconduct that amounts simply to poor judgment or even extremely poor judgment, but should be reserved for truly egregious circumstances
 
 (see, e.g., Matter of Kiley,
 
 74 NY2d 364, 369-370;
 
 Matter of Cunningham,
 
 57 NY2d 270, 275;
 
 Matter of Shilling,
 
 51 NY2d 397, 403). Judges, however, are held to higher standards of conduct than the public at large
 
 (Matter of Aldrich v State Commn. on Judicial Conduct,
 
 58 NY2d 279, 283;
 
 see, Matter of Spector v State Commn. on Judicial Conduct,
 
 47 NY2d 462, 468-469) and thus what might be acceptable behavior when measured against societal norms could constitute "truly egregious” conduct in the present context. Such fine distinctions are unnecessary here, however, because under any standard, petitioner’s conduct compels a sanction of removal.
 

 Falsification of documents is inimical to the character required of a Judge
 
 (see, Matter of Reeves,
 
 63 NY2d 105, 110). Here, petitioner completed and submitted two fraudulent credit card applications, deceiving the bank into believing that the applicant was Carmela Mazzei, and that she was alive
 
 (compare, Matter of Bailey,
 
 67 NY2d 61, 62-63,
 
 supra).
 
 Petitioner aggravated that misconduct by actually using the fraudulently-obtained card to procure $2,000, and making further misrepresentations to bank personnel investigating the case
 
 (see, Matter of Levine,
 
 74 NY2d 294, 297).
 

 That petitioner’s conduct was not directly related to his judicial office is immaterial in these circumstances
 
 (see,
 
 22 NYCRR 100.2 [a] ["A judge shall respect and comply with the law and shall conduct himself or herself
 
 at all times
 
 in a manner that promotes public confidence in the integrity and impartiality of the judiciary”; emphasis added];
 
 Matter of Bailey,
 
 67 NY2d, at 62-63 [false statements to obtain hunting license]). Nor does petitioner’s alleged motivation of deceiving his wife — not the bank — mitigate the objective conduct.
 

 Petitioner also contends that the complaint erroneously charged a violation of DR 1-102 (A) (4) of the lawyer’s Code of Professional Responsibility. We agree that it is improper for the Commission, which has no power to discipline attorneys, to formally charge a violation of the Code
 
 (compare, Matter of
 
 
 *573
 

 Lenney,
 
 71 NY2d 456, 459). While of course a Judge admitted to the Bar "shall not * * * [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation” (DR 1-102 [A] [4]), the proscription against such conduct is perforce included in the more generally-worded judicial code of conduct
 
 (see,
 
 22 NYCRR 100.1, 100.2 [a]). The potential prejudice in formally charging violations of the lawyer’s ethical code in judicial disciplinary proceedings is that determinations by the Commission (or this Court on review) might erroneously be perceived as binding in subsequent proceedings to discipline the Judge as a lawyer. Inasmuch as we have de novo review power in this proceeding, however, it is unnecessary to remit to the Commission to correct the technical error
 
 (see, Matter of Gelfand,
 
 70 NY2d 211, 216-217). It is undisputed that petitioner violated the Code of Judicial Conduct, and we conclude that removal is the appropriate sanction.
 

 Accordingly, the determined sanction of the State Commission on Judicial Conduct should be accepted, without costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., and Smith concur in Per Curiam opinion; Judge Bellacosa taking no part.
 

 Determined sanction accepted, without costs, and Rudolph L. Mazzei is deemed removed from the office of Judge of the County Court, Suffolk County.
 

 [1]
 

 . Although petitioner’s term expired December 31,1992, this proceeding is not moot because a sanction of removal would render him ineligible for future judicial office (NY Const, art VI, § 22 [h]; see,
 
 Matter of Bailey,
 
 67 NY2d 61, 63, n;
 
 Matter of Scacchetti v State Commn. on Judicial Conduct,
 
 56 NY2d 980, 982).
 

 [2]
 

 . The charge stated: "On two occasions in 1989, respondent fraudulently signed his deceased mother’s name to a pre-approved application for credit cards sent by Chemical Bank to her, thereby obtaining an authorized user’s second card in his name, used such card to obtain a cash advance, attempted to use it a second time to obtain a cash advance, and, thereafter, gave false and misleading information to bank representatives who were inquiring into use of the credit card.”