[918 NE2d 116, 889 NYS2d 526]

In the Matter of JOSEPH S. ALESSANDRO, a Justice of the Supreme Court, Westchester County, Petitioner. STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.

In the Matter of FRANCIS M. ALESSANDRO, a Judge of the New York City Civil Court, Bronx County, Petitioner. STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.

Argued September 9, 2009; decided October 20, 2009

**POINTS OF COUNSEL**

*DerOhannesian & DerOhannesian*, Albany (*Paul DerOhannesian II* and *Jennifer C. Zegarelli* of counsel), for petitioner in the first above-entitled matter. I. Joseph S. Alessandro testified before the Commission to the best of his recollection and based on miscommunications with his brother. (*Matter of Rambarran*, 308 AD2d 53; *Matter of Kiley*, 74 NY2d 364; *Matter of Skinner*, 91 NY2d 142.) II. The complainant Barbara Battista suffered no loss but rather used the legal judicial monitoring system to collect more than she was entitled to. (*Matter of Kelso*, 61 NY2d 82.) III. The context of the charges against Joseph S. Alessandro is not "truly egregious." (*Matter of Edwards*, 67 NY2d 153; *Matter of Kelso*, 61 NY2d 82; *Matter of Steinberg*, 51 NY2d 74.)

*Edward Lindner*, New York City, *Robert H. Tembeckjian* and *Melissa DiPalo* for respondent in the first above-entitled

matter. I. Petitioner committed egregious misconduct by failing to repay a loan as promised and contriving to delay repayment by procuring an affidavit under false pretenses and asserting that affidavit as grounds to dismiss Barbara Battista's lawsuit to recover on the loan. (*Matter of Heburn,* 84 NY2d 168; *Matter of Myers,* 67 NY2d 550; *Matter of Mason [State Commn. on Jud. Conduct],* 100 NY2d 56; *Matter of Going,* 97 NY2d 121; *Rosasco Creameries, Inc. v Cohen,* 276 NY 274; *Lloyd Capital Corp. v Pat Henchar, Inc.,* 80 NY2d 124.) II. Petitioner's misconduct is aggravated by his misleading and evasive testimony before the Commission on Judicial Conduct. (*Matter of Mason [State Commn. on Jud. Conduct],* 100 NY2d 56; *Matter of Mogil,* 88 NY2d 749; *Matter of Kiley,* 74 NY2d 364.) III. Petitioner intentionally failed to disclose the Battista mortgage on his financial disclosure statement. IV. Petitioner submitted multiple loan applications containing false statements and omissions that were, or appeared to be, for improper purposes. (*Gillman v Chase Manhattan Bank,* 73 NY2d 1; *Matter of Heburn,* 84 NY2d 168; *Matter of Bailey,* 67 NY2d 61.) V. The appropriate sanction is removal. (*Matter of Collazo [State Commn. on Jud. Conduct],* 91 NY2d 251; *Matter of Myers,* 67 NY2d 550; *Matter of Steinberg,* 51 NY2d 74; *Matter of Heburn,* 84 NY2d 168; *Matter of Mazzei,* 81 NY2d 568; *Matter of Boulanger,* 61 NY2d 89.)

*Robert P. Roche,* Albany, for petitioner in the second above-entitled matter. I. The Commission on Judicial Conduct determination is based on untruths and distorted misperceptions of what did and should have happened in this case. II. The case against Francis M. Alessandro does not rise to the benchmark for removal, which is an extreme remedy. III. The record before this Court does not support the extreme punitive result of removal from the bench of Francis M. Alessandro. (*People v Termotto,* 81 NY2d 1008; *Matter of Edwards,* 67 NY2d 153; *Matter of Reedy,* 64 NY2d 299; *Matter of Cunningham,* 57 NY2d 270; *Matter of Bulger v State Commn. on Jud. Conduct,* 48 NY2d 32; *Matter of Schamel,* 46 AD2d 236; *Matter of Spector v State Commn. on Jud. Conduct,* 47 NY2d 462; *Matter of LaBelle,* 79 NY2d 350; *Matter of Lenney,* 70 NY2d 863.)

*Edward Lindner,* New York City, *Robert H. Tembeckjian* and *Melissa DiPalo* for respondent in the second above-entitled matter. I. Petitioner filed financial disclosure statements that were incomplete and inaccurate, and intentionally omitted the Battista mortgage. II. Petitioner submitted multiple loan applications containing false statements and omissions that

were, or appeared to be, for improper purposes. (*Gillman v Chase Manhattan Bank,* 73 NY2d 1; *Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner,* 96 NY2d 300.) III. Petitioner's principal arguments to this Court are unpreserved and entirely contradicted by the hearing record. (*People v Baumann & Sons Buses, Inc.,* 6 NY3d 404.) IV. Petitioner has committed egregious misconduct and should be removed from office. (*Matter of Mazzei,* 81 NY2d 568; *Matter of Collazo [State Commn. on Jud. Conduct],* 91 NY2d 251; *Matter of Myers,* 67 NY2d 550; *Matter of Steinberg,* 51 NY2d 74; *Matter of Heburn,* 84 NY2d 168.)

### OPINION OF THE COURT

Per Curiam.

We are called upon to review determinations of the State Commission on Judicial Conduct removing from office Joseph Alessandro, a Justice of the Supreme Court, Westchester County, and his brother Francis Alessandro, a Judge of the New York City Civil Court, Bronx County, for alleged acts of judicial misconduct. Both brothers admit misconduct, but challenge the sanction as too severe. Upon exercise of our de novo review powers, we conclude that removal is the appropriate sanction for Joseph Alessandro, but we reject the sanction of removal imposed for Francis Alessandro and determine that the appropriate sanction is admonition.

## I. Joseph Alessandro

In February 2007, the Commission served a complaint upon Joseph Alessandro containing four charges of misconduct. The charges alleged that he attempted to defraud an individual out of a $250,000 loan and/or failed to repay the loan; gave false testimony during the Commission investigation; filed a materially incomplete financial disclosure statement with the Ethics Commission for the Unified Court System (Ethics Commission); and submitted loan applications that omitted various assets and liabilities.

A referee conducted a joint hearing in the proceedings against Joseph and Francis Alessandro. The referee sustained all four charges against Joseph, and the matter proceeded to oral argument before the Commission. In its February 2009 determination, the Commission concluded that Joseph should be removed from office.

## A. Battista Loan

Joseph Alessandro, an attorney with more than 30 years of experience in private practice, entered the race for Westchester County Court Judge in 2003. Salvatore LoBreglio, the director of the Westchester Independence Party, suggested that Barbara Battista serve as Joseph's campaign manager and treasurer. Battista, a retired nurse, had some experience working on election campaigns. Previously, Joseph had paid Battista to prepare his (ultimately unsuccessful) application for an interim appointment to County Court.

In August 2003, Battista proposed that Joseph undertake a massive mailing of campaign literature. Joseph had already contributed more than $140,000 of his personal funds to the campaign, and told Battista that he was not prepared to spend additional money. Battista then offered to lend Joseph $250,000. According to Battista, she "made it very clear that there had to be an end date for it to be paid back." Joseph accepted, and the parties orally agreed that Joseph would repay the loan by July 2004. Between late August and mid-September 2003, using money borrowed against her retirement funds in a brokerage account, Battista paid a print company $185,000 toward the cost of Joseph's campaign literature, and paid an additional $57,000 into Joseph's campaign account.[1]

Joseph and Francis Alessandro co-signed a handwritten note reflecting Joseph's $250,000 indebtedness to Battista. Dated August 31, 2003, the note provided a fixed annual interest rate of 1.5% and a term of 30 days, with the principal due and payable on September "31," 2003. To secure the note, the brothers co-signed a handwritten mortgage on their jointly-owned property in Valhalla, New York. Battista did not record the handwritten mortgage at that time.

Soon thereafter, campaign attorney John Ciampoli informed Joseph, Battista and LoBreglio that Battista's payments to the print company and the campaign account would violate statutory campaign contribution limits if not repaid by Election Day. Ciampoli therefore advised Joseph to assume the campaign's debt to Battista personally. As a consequence, Joseph and Battista signed a typewritten promissory note, dated November 3, 2003, which acknowledged the $250,000 indebtedness. The note

---

1. These payments totaled $242,000. Battista says she also advanced $8,000 in cash to pay campaign expenses, but she does not have documents to support this claim.

provided for a 15-year term and a variable interest rate, equal to the interest rate charged by Battista's brokerage account, that was initially set at 2.86%. Joseph also signed a typewritten mortgage, dated October 23, 2003, which secured the loan with the brothers' jointly-owned Valhalla property. Francis did not sign either the typewritten note or the typewritten mortgage. Battista recorded the typewritten mortgage on November 5, 2003.[2]

Joseph was elected to County Court in November 2003. For the next year, he made interest payments to Battista as required by the typewritten promissory note. In the spring and summer of 2004, Battista inquired about repayment of the loan. Joseph repeatedly assured her that he was attempting to secure financing to repay her. In September 2004, Joseph told Battista that he had a "mortgage guy" working to obtain a loan, and showed her a document that appeared to be an unsigned mortgage application or commitment. Meanwhile, in June 2004, Joseph and Francis had paid more than $300,000 in cash to purchase property in Seaside Heights, New Jersey. They obtained the money by taking a loan against a joint brokerage account. There is no documentary evidence or testimony of an impartial witness to support Joseph's claim that he was trying to repay the Battista loan.

In October 2004, Battista enlisted attorney Harvey Kaminsky to help her recover the loan. According to Kaminsky, Battista told him that "she felt she was getting the runaround, and . . . she sort of felt intimidated calling the judge because she was calling him in his chambers saying she needed the money." Kaminsky contacted Joseph, who acknowledged the debt, and said that he had applied for a mortgage on a property he owned in New Jersey and expected to have the money within a few weeks. At Kaminsky's request, Joseph sent Kaminsky copies of unsigned mortgage applications he had completed.

Later that month, Joseph told Kaminsky that, in order to obtain financing, he needed a document indicating that he was current on the interest payments due on the mortgage Battista held on the Valhalla property. Although Kaminsky "didn't quite understand why it was important for a New Jersey piece of

---

**2.** The typewritten note and mortgage both indicated that Battista had delivered a satisfaction of indebtedness to the Committee to Elect Joseph Alessandro, and that the Committee had delivered an acknowledgment of indebtedness to Joseph Alessandro.

property that was being put up for refinancing," he promptly obtained the letter from Battista and faxed it to Joseph.

Soon thereafter, Joseph informed Kaminsky that "his title company was troubled by the two mortgages" on the Valhalla property. As a result, Joseph claimed, he needed a document clarifying that the typewritten mortgage was the only mortgage on the Valhalla property and that the handwritten mortgage was "null and void since it was unrecorded." Kaminsky told Joseph that his request created a difficult situation because he believed that the handwritten mortgage afforded Battista more protection. Joseph replied that "unless we got rid of the first mortgage, he could not get the loan." Kaminsky subsequently prepared for Battista's signature an affidavit stating that the typewritten mortgage replaced the handwritten mortgage.

Kaminsky called Joseph after sending him the signed affidavit, at which point Joseph told Kaminsky to speak to his attorney, Edward Koester. Ultimately, Kaminsky referred Battista to another attorney for potential litigation against Joseph.

In January 2005, Battista recorded the handwritten mortgage, thereby creating a $500,000 lien against the Valhalla property. In February 2005, she commenced an action against Joseph and Francis to foreclose on the handwritten mortgage. Joseph moved to dismiss the complaint, relying on the affidavit in which Battista stated that the 15-year typewritten mortgage (not yet due on its face) "replaced" the handwritten mortgage. When the motion to dismiss was denied, Joseph filed a verified answer denying that he and Francis owed Battista $250,000 under the handwritten note and mortgage. In February 2006, Joseph, Francis and Battista settled the lawsuit for $273,000 ($250,000 plus $23,000 in attorneys' fees).

## B. Testimony before the Commission

Joseph testified before the Commission on Judicial Conduct during its investigation. In September 2005, Commission counsel asked Joseph to identify the lender that requested information about mortgages on the Valhalla property. He answered, "I don't recall which bank it was with. I think it was GreenPoint." When asked the same question during his December 2005 appearance before the Commission, Joseph stated, "I don't know which one, but I guess it was GreenPoint or whatever." Commission counsel reminded Joseph of his previous testimony that a GreenPoint underwriter requested this information; he responded, "Okay, then that's who it was then."

Later during the December 2005 appearance, Commission counsel told Joseph that the GreenPoint underwriter assigned to his loan application denied speaking to him. Joseph replied, "I guess then the underwriter was Global [Equity] or the broker was Global." When Commission counsel represented that the Global loan originator also denied speaking to Joseph, he testified: "If he said he had no conversation with me, obviously, I had no conversation with him, but I did have a conversation with somebody pertaining to this information from one of these mortgage companies." But in June 2007, Joseph testified before the referee that he discussed the mortgage on the Valhalla property not with GreenPoint or Global Equity, but rather with his attorney, Edward Koester, "or one of the banks he was working with." Koester testified before the referee that he had asked Joseph for a letter from Battista stating the amount of the obligation and "payment history," but did not say that he had asked for or received the particular documents Battista furnished.

## C. Financial Disclosure Statements

On April 14, 2005, Joseph filed a financial disclosure statement for calendar year 2004 with the Ethics Commission. He failed to disclose the following liabilities: (1) the mortgage Battista held against the Valhalla property; (2) a mortgage held by GreenPoint against a Bronx property he jointly owned with Francis; and (3) a mortgage held by Countrywide against another Bronx property he owned individually. In September 2005, after testifying before the Commission, Joseph filed an amended disclosure statement that included these mortgages.

Before the referee, Joseph testified that he failed to disclose the Battista mortgage because he merely "copied" from his brother Francis' financial disclosure statement, which did not list that mortgage. He further testified that he did not disclose the Battista mortgage because he believed he would obtain a mortgage and repay Battista.

## D. Loan Applications

In 2004, Joseph submitted five loan applications to Global Equity Funding, three of which were submitted jointly with Francis. Both Joseph and Francis spoke to the mortgage broker, who returned the applications for signature to Francis. In turn, Francis gave the applications to Joseph to sign. None of the Global Equity applications listed Battista's mortgage on the

Valhalla property, a mortgage held by Countrywide on Joseph's property in the Bronx, various properties owned individually by Joseph and various properties jointly owned by the brothers. On several applications, Joseph represented that he was not a co-maker or endorser on a note.

In the summer of 2005, Joseph and Francis completed three loan applications with mortgage broker Moses Rambarran. All three loans were approved. Rambarran entered information provided by Joseph into a computer and then printed the applications. Joseph testified that he signed the applications without reading them. The applications did not disclose Joseph's mortgage with Countrywide, various properties he owned individually, and other properties he owned jointly with Francis. Two of the applications omitted Battista's mortgage on the Valhalla property; the third application, which sought refinancing of the Valhalla property, noted the $250,000 lien but did not name Battista. On all three applications processed by Rambarran, Joseph represented that he was not a co-maker or endorser on a note, although he was. On one application, he represented that he was not a party to a lawsuit, even though Battista had commenced the foreclosure action against him earlier that year.

Before the referee, Joseph testified that he did not list the Battista mortgage on the Global Equity loan applications because he "was under the impression that it would have shown up in [his] credit report." He also indicated that he and Francis informed the mortgage brokers of all their assets and liabilities, but the brokers did not include some of this information in the loan applications.

## II. Francis Alessandro

On February 19, 2007, the Commission served a complaint upon Francis Alessandro containing two charges of misconduct. The charges alleged that Francis filed materially incomplete financial disclosure statements with the Ethics Commission, and submitted loan applications to mortgage brokers that omitted various assets and liabilities. Following the joint hearing, the referee issued a report sustaining both charges, and the matter proceeded to oral argument before the Commission. In its determination dated February 11, 2009, the Commission concluded that Francis should be removed from office. One member of the Commission dissented as to the sanction and voted to censure Francis.

Francis has been a Judge of the New York City Civil Court, Bronx County, since 1990. Prior to becoming a judge, he engaged

in the private practice of law with his brother, Joseph. Their practice included real estate law. Francis testified that he co-signed the handwritten note and mortgage in August 2003 "as an accommodation" to his brother. He believed the Battista loan was primarily Joseph's responsibility, but acknowledged that his signature made him an obligor on the note. Francis testified that he did not learn of the typewritten note and mortgage until early 2005, when Battista named him as a defendant in her foreclosure action.

## A. Financial Disclosure Statements

On July 7, 2004, Francis filed a financial disclosure statement for calendar year 2003 with the Ethics Commission. He failed to disclose the following assets and liabilities: (1) the mortgage Battista held on the Valhalla property; (2) a mortgage held by GreenPoint on a Bronx property he jointly owned with Joseph; (3) his one-half interest in the Valhalla property; and (4) his one-half interest in a property in Pelham. Francis failed to disclose the same assets and liabilities on his financial disclosure statement for calendar year 2004. He testified that his failure to disclose the Battista mortgage was "negligent." He also stated that he omitted the Battista mortgage because it was his "brother's obligation" and it was an "unrecorded instrument."

## B. Loan Applications

As noted above, Francis and Joseph submitted three joint loan applications to Global Equity Funding in 2004 and, in 2005, they completed three loan applications with Moses Rambarran. The Global Equity applications failed to list the Battista mortgage, one property owned individually by Francis, and various properties he owned jointly with Joseph. Francis testified that he did not disclose the Battista mortgage on the Global Equity loan applications because it was "unrecorded." Francis also represented in these applications that he was not a co-maker or endorser on a note.

Similarly, the loan applications processed by Moses Rambarran did not list one property owned individually by Francis and several properties owned jointly by the brothers. Two of these applications contained no reference to the Battista mortgage; one application acknowledged the $250,000 lien on the Valhalla property, but did not identify Battista. On all three applications, Francis represented that he was not a co-maker or endorser on a note and that he was not a party to a lawsuit, even though

Battista had named him as a defendant in her action to foreclose on the handwritten mortgage. Before the referee, Francis testified that he gave the mortgage brokers "all the information on the phone" and "relied on them doing what they had to do."

## III.

■ Based upon our independent review of the record, we conclude that Joseph Alessandro engaged in misconduct warranting removal from office. We have repeatedly emphasized that "deception is antithetical to the role of a Judge who is sworn to uphold the law and seek the truth" (*Matter of Myers*, 67 NY2d 550, 554 [1986]). Moreover, judges "are held to higher standards of conduct than the public at large" (*Matter of Mazzei*, 81 NY2d 568, 572 [1993]).

Joseph Alessandro accepted a $250,000 loan from his campaign manager and promised to repay her within a year. He failed to keep that promise and, more importantly, he strung Battista and her attorney along with repeated assurances that he would soon obtain financing to repay the loan. After he took judicial office, Joseph persuaded Kaminsky, Battista's attorney, to procure an affidavit from her, downplaying the attorney's misgivings that this might not serve his client's best interest. And then Joseph later, in fact, used this affidavit against Battista in the foreclosure action she commenced to recover the loan. In this regard, we find it particularly troubling that Joseph gave changeable answers when asked to identify the bank that asked for information regarding Battista's mortgage. His evasiveness creates a strong inference that he was dishonest in his dealings with Battista and her attorney with respect to the requested affidavit, and in his testimony in these proceedings.

We are mindful that "removal, the ultimate sanction, should not be imposed for misconduct that amounts simply to poor judgment or even extremely poor judgment, but should be reserved for truly egregious circumstances" (*Matter of Mazzei*, 81 NY2d at 572). Further, we recognize that Joseph's inexperience as a political candidate in 2003 may have contributed to his decision to accept a problematic loan from his campaign manager in the first place. Nevertheless, having accepted the loan, he was required to meet this obligation with "the highest level of judicial honesty and integrity" (*id.*).

This high standard of conduct also required Joseph to provide truthful and complete information in his financial disclosure statement and mortgage applications. His failure to disclose the

Battista mortgage in these documents is consistent with an ongoing pattern of shirking his obligation to repay her. Like the Commission, we therefore reject Joseph's argument that these omissions should be attributed to mere carelessness.

## IV.

Upon our independent review of the record as to Francis Alessandro, we reduce his sanction to an admonition. To be sure, Francis' failure to fully disclose his assets and liabilities in his 2003 and 2004 financial disclosure statements, as required by the Rules of the Chief Judge (22 NYCRR part 40), is a serious matter. As the Commission noted, the information provided on these forms is available to the public and, among other things, enables lawyers and litigants to determine whether to request a judge's recusal. Judges must complete their financial disclosure forms with diligence, making every effort to provide complete and accurate information.

We are not convinced, however, that Francis deliberately omitted required information from his financial disclosure statements. There is no evidence in the record that Francis intentionally failed to disclose his one-half interest in two properties and a mortgage on a third property jointly owned with his brother. He had no apparent motive to do so, and even the Commission acknowledged that these omissions constituted "carelessness." Francis' failure to disclose the Battista loan presents a closer question; he attributed this omission to negligence, but also testified that he omitted this mortgage because it was his "brother's obligation" and it was "unrecorded." Nevertheless, we are unable to conclude by a preponderance of the evidence that any of the omissions was intentional. Careless omissions from a financial disclosure statement are not the type of "truly egregious" conduct that warrants removal from judicial office (*Matter of Cunningham*, 57 NY2d 270, 275 [1982]).

Likewise, we find that Francis' omission of various assets and liabilities from loan applications reflects carelessness rather than deliberate concealment of material information. The Commission inferred that Francis misrepresented his financial situation to enhance his chances of qualifying for a loan, but this conclusion is undercut by the fact that he omitted far more in the way of assets than liabilities. We emphasize that judges should adhere to the highest standards of honesty and integrity in all matters; however, we are unwilling to remove a judge from office for completing loan applications in a sloppy fashion where there is no evidence of intent to deceive.

· V.

Accordingly, the determined sanction as to Joseph Alessandro should be accepted, without costs, and he should be removed from the office of Justice of the Supreme Court, Westchester County. The determined sanction as to Francis Alessandro should be rejected, without costs, and the sanction of admonition imposed.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in per curiam opinion; Chief Judge LIPPMAN taking no part.

In *Matter of Alessandro (State Commn. on Jud. Conduct)*: Determined sanction accepted, without costs, and Joseph S. Alessandro removed from the office of Justice of the Supreme Court, Westchester County.

In *Matter of Alessandro (State Commn. on Jud. Conduct)*: Determined sanction rejected, without costs, and the sanction of admonition imposed.