[2 NYS3d 731]

Joseph Paul Winery Inc., Petitioner, v State of New York et al., Respondents.

Supreme Court, New York County, November 5, 2014

440

**APPEARANCES OF COUNSEL**

*Sullivan Gardner, P.C.*, New York City, for petitioner.
*Jacqueline Flug*, Albany, for respondents.

**OPINION OF THE COURT**

DORIS LING-COHAN, J.

Petitioner Joseph Paul Winery, Inc. doing business as Vineyard 48 is a domestic corporation with a winery operating in the North Fork's Wine Country, in the town of Cutchogue, New York, pursuant to a farm winery license which has been

revoked by respondent.[1] This is a case of first impression as no other winery has had its license revoked by respondent.

## I. Background

On or about May 3, 2013, respondent New York State Liquor Authority commenced a proceeding by amended notice of pleading to cancel or revoke petitioner's farm winery license, asserting the following eight alleged violations of the Alcoholic Beverage Control Law and the Rules of the State Liquor Authority (the Rules):

"(1) failing to notify the Authority regarding the change in its hours of operation, in violation of § 110(4)[2] of the Alcoholic Beverage Control Law;

"(2) failing to notify the Authority of a change in the kinds of activities taking place in the licensed establishment, in violation of § 110(4) of the Alcoholic Beverage Control Law;

"(3) becoming a focal point for police attention due to noise, disturbance, misconduct or disorder warranting revocation, cancellation or suspension of the license in accordance with rule 36.1(q) of the Rules of the State Liquor Authority (9 NYCRR 53.1[q]);[3]

"(4) creating or permitting conditions which adversely affected the health, welfare and safety of

---

**1.** This court notes that, as this case involves a matter of great interest to the community in which the winery is located, as well as the potential termination of a business which promotes New York's wine industry and tourism, considerable time was spent trying to settle this proceeding amongst the parties.

**2.** Alcoholic Beverage Control Law § 110 (4) provides as follows:

"If there be any change, after the filing of the application or the granting of a license, in any of the facts required to be set forth in such application, a supplemental statement giving notice of such change, cost and source of money involved in the change, duly verified, shall be filed with the authority within ten days after such change. Failure to do so shall, if willful and deliberate, be cause for revocation of the license."

**3.** 9 NYCRR 53.1 is titled "[c]auses for revocation" and subdivision (q) provides:

"[w]hen any noise, disturbance, misconduct, disorder, act or activity occurs in the licensed premises, or in the area in front of or adjacent to the licensed premises, or in any parking lot provided by the licensee for use by licensee's patrons, which, in the judgment of the authority, adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located,

the community, in violation of § 118(1) & (3)[4] of the Alcoholic Beverage Control Law;

"(5) engaging in improper conduct by, *inter alia*, continually operating as a night club including using a DJ and permitting a dance party type atmosphere in violation of a Farm Winery license warranting revocation, cancellation or suspension of the license in accordance with rule 36.1(n) of the Rules of the State Liquor Authority (9 NYCRR 53.1[n]);[5]

"(6) the licensed premises has ceased to be operated as a bona fide premises within the contemplation of the issued license, warranting revocation, cancellation or suspension of the license in accordance with rule 36.1(d) of the Rules of the State Liquor Authority (9 NYCRR 53.1[d]);[6]

---

or results in the licensed premises becoming a focal point for police attention or is offensive to public decency."

4. Alcoholic Beverage Control Law § 118 is titled "[r]evocation of licenses for cause" and subdivision (1) provides:

"Any license or permit issued pursuant to this chapter may be revoked, cancelled, suspended and/or subjected to the imposition of a civil penalty for cause, and must be revoked for the following causes:

"(a) Conviction of the licensee, permittee or his agent or employee for selling any illegal alcoholic beverages on the premises licensed.

"(b) For transferring, assigning or hypothecating a license or permit."

Alcoholic Beverage Control Law § 118 (3) provides:

"As used in this section, the term 'for cause' shall also include the existence of a sustained and continuing pattern of noise, disturbance, misconduct, or disorder on or about the licensed premises, related to the operation of the premises or the conduct of its patrons, which adversely affects the health, welfare or safety of the inhabitants of the area in which such licensed premises are located."

5. 9 NYCRR 53.1 (n) provides:

"For improper conduct by the licensee or permittee, and if a corporation, by an officer, director or person directly or indirectly owning or controlling 10 percent or more of its stock, or an officer, director or person directly or indirectly owning or controlling 10 percent or more of the stock of any parent, affiliate or subsidiary of such licensed corporation, whether such conduct was on or off the licensed premises, and which conduct is of such nature that if known to the authority, the authority, in its discretion, could properly deny the issuance of a permit or license or any renewal thereof because of the unsatisfactory character and/or fitness of such person."

6. 9 NYCRR 53.1 (d) provides as follows: "[Alcoholic Beverage Control Law, § 64-a.] Where any licensed premises ceases to be operated as a bona

"(7) operating a retail cigar shop in violation of subdivision 4 of section 63 of the Alcoholic Beverage Control Law;[7] and

"(8) violating subdivision 4 of section 63 of the Alcoholic Beverage Control Law by engaging in dance parties." (*See* answer ¶ 16; amended notice of pleading, dated May 3, 2013, answer, exhibit 1.)[8]

An administrative hearing was conducted before Administrative Law Judge Nicholas De Cesare (ALJ) on eight dates between March 2013 and September 2013, resulting in a written decision that sustained charges one through six, and dismissed charges seven and eight. The court notes that the ALJ's decision, while not sustaining charges seven and eight,[9] inexplicably discusses violations of subdivision (1) of section 104 of the Alcoholic Beverage Control Law, while charges seven and eight of the amended notice of pleading charge petitioner with violating subdivision (4) of section 63 of the Alcoholic Beverage Control Law. (Order to show cause, exhibit A.)

At the hearing, the ALJ heard testimony from approximately eight witnesses, including the Chief of Police of the Town of Southold Martin Flately, several of petitioner's neighbors

---

fide premises within the contemplation of the license issued for such premises, in the judgment of the Authority."

7. Alcoholic Beverage Control Law § 63 is titled "[s]even day license to sell liquor at retail for consumption off the premises" and subdivision (4) provides:

> "No licensee under this section shall be engaged in any other business on the licensed premises. The sale of lottery tickets, when duly authorized and lawfully conducted, the sale of corkscrews or the sale of ice or the sale of publications, including prerecorded video and/or audio cassette tapes, designed to help educate consumers in their knowledge and appreciation of wine and wine products, as defined in section three of this chapter, or the sale of non-carbonated, non-flavored mineral waters, spring waters and drinking waters or the sale of glasses designed for the consumption of wine, racks designed for the storage of wine, and devices designed to minimize oxidation in bottles of wine which have been uncorked, shall not constitute engaging in another business within the meaning of this subdivision."

8. The court notes that only one amended notice of pleading dated May 3, 2013 is referred to by respondents in their answer (¶ 16) with respect to the charges imposed against petitioner. (Answer, exhibit 1.)

9. Furthermore, the dismissal by the ALJ of charge eight ("engaging in dance parties") is internally inconsistent with the sustaining of charge five ("operating as a night club . . . and permitting a dance party type atmosphere") unless it was for the reason that it was duplicative—a reason not indicated in the ALJ decision.

(Southold residents), the Authority's Deputy Commissioner of Licensing, petitioner's manager, and an expert produced by petitioner.

Thereafter, on December 17, 2013, a monthly meeting was held by the Authority's Board, at which a vote was to be conducted as to whether to affirm the findings of the ALJ (ostensibly based upon the record of the hearing held before the ALJ) and, if affirming, to determine the appropriate penalty. Prior to voting to revoke petitioner's license, however, the Board permitted the following five individuals from the public, to give testimony: (1) Chief of Police Martin Flately; (2) Mrs. Laurie Helsinki; (3) Mr. Johnson; (4) Mrs. Johnson; and (5) Mary Helsinki. Three of these witnesses, Mr. Johnson, Mrs. Johnson and Mary Helsinki, had not testified before the ALJ. Thus, only two of the five individuals had testified at the previous hearing before the ALJ. None of the five witnesses supplied sworn testimony at the December 17, 2013 meeting. Nor was petitioner permitted to cross-examine any of the individuals who testified at the December 17, 2013 meeting. After the new unsworn testimony was given (outside of the record before the ALJ), respondent Chairman Dennis Rosen and Commissioner Jeanique Greene (collectively the Board) made some remarks, indicating that they were basing their vote, at least in part, on the new testimony, and voted to adopt the determination of the ALJ to sustain charges one through six, and dismissed charges seven and eight. The Board imposed the most extreme penalty available—the revocation of petitioner's farm winery license and forfeiture of its bond.

## II. Discussion

### A. Article 78 Proceeding and the Parties' Arguments

Petitioner commenced this proceeding pursuant to article 78 of the CPLR, by order to show cause and verified petition, seeking an order granting petitioner's request for a reversal of the Board's decision and dismissal of the charges sustained by the Board.[10] The Honorable Martin Shulman (as presiding ex parte

---

10. The court notes that petitioner's lengthy petition (which was approximately an inch thick without the exhibits), consisting of 219 numbered paragraphs, and footnotes in tiny font, required exhaustive and time-consuming review, particularly as it lacked a table of contents, numbered pages or index. Respondents' answering papers, although brief, inexplicably failed to address the bulk of petitioner's legal points made in its petition/order to show cause, requiring extensive independent research by the court.

judge) signed the within order to show cause and temporarily restrained and enjoined respondents

> "from taking any action to terminate, enjoin or otherwise interfere with the day-to-day operation and business activities of the business of Petitioner or any of its principals, or otherwise interfering with . . . Petitioner' [sic] ability, or that of its principals, to conduct business (specifically with respect to pruning the vines, wine production, retail sales and related tasting solely related to such sales). Otherwise there is no TRO allowing any tasting parties with or without music or in outdoor/

---

Notably absent from respondents' submissions was any affirmation/affidavit in opposition to the relief requested in the order to show cause.

Additionally, inexplicably, notwithstanding that this was a case filed in a court of law, neither party saw it fit to supply this court with a memorandum of law with respect to this proceeding, despite the novel issues presented. While a minimal amount of case law is cited in the petition and answer, such is improper practice, and fails to present each side's legal arguments in a cogent way.

Further, notwithstanding that the transcript of the administrative hearing before the ALJ *is 1,158 pages in length, and approximately a foot in height*, neither party had the courtesy to provide the court with the appropriate citations in their submissions and relevant sections, by page and line, requiring exhaustive and time-consuming review of a 1,158-page transcript, wasting considerable judicial resources.

Also, both sides initially failed to submit the transcript of the December 17, 2013 meeting before the Board, citing only to the website of the public hearing, presumably expecting the court to watch the meeting on the website for approximately two hours, and to take copious notes transcribing what transpired, which the court did watch and endure. As the court is expected to carefully review what transpired during such meeting, prior to rendering its decision (as it was claimed that an illegal additional hearing was conducted at that meeting upon which the Commissioners based their vote), the court was compelled to issue an interim order requiring a printed transcript of the meeting. Consequently, the case had to be adjourned for its receipt. When finally submitted, the printed transcript of the December 17, 2013 meeting before the Board was 73 pages in length.

All the submissions on this case occupied at least one file cabinet drawer. Notwithstanding the above, and despite the failure by both sides to submit a memorandum of law, and limited judicial resources due to budget cuts, including curtailed courthouse hours, this court endeavored to issue a decision, which required extensive independent research given the submissions and lack of memorandum of law. Additionally, subsequent to the filing of the within proceeding, I was appointed to the Appellate Term. Instead of administratively reassigning this case, this proceeding continued to remain in my inventory despite the numerous pressing additional duties of an appellate judge, including reading for and hearing arguments twice a month, and issuing decisions on numerous cases, as well as handling hospital hearings, emergencies (Appellate Term and ex parte) and a supreme court case load.

indoor venues."

Upon assignment to this court, a hearing/oral argument was held before this court, at which the court provided additional time for the parties to supply further submissions.

Petitioner asserts numerous arguments as to why the charges imposed against it must be dismissed, some of which relate to the sufficiency of the evidence before the ALJ,[11] and others which allegedly involve due process, errors of law and violations of lawful procedures. In summary, as to petitioner's arguments not relating to substantial evidence, petitioner asserts, in essence, that: (1) the Authority failed to comply with lawful procedures in its conduct of the December 17, 2013 board meeting, which was an unnoticed, additional hearing held without due process; (2) it was an error of law, arbitrary and capricious and/or an abuse of discretion to revoke its farm winery license absent any statutory or regulatory criteria barring the alleged manner in which petitioner conducts its wine tastings; and (3) the notice of several of the charges is facially insufficient and violative of due process in that the charges fail to apprise petitioner with sufficient information of what it is accused of, upon which it can defend itself.

Specifically, petitioner argues, inter alia, that respondents' actions in revoking its liquor license were arbitrary and capricious and a violation of due process rights because at the meeting before the Board on December 17, 2013, an additional hearing was conducted (separate from the hearing before the ALJ), which constitutes an "illegal" hearing in violation of the New York State Administrative Procedure Act and the Rules of the Authority. According to petitioner, it attended the Authority's monthly board meeting on December 17, 2013 prepared to hear the Authority's decision and was instead blindsided as "an informal freestyle hearing" was conducted, lasting approximately two hours, at which witnesses who were not under oath were permitted to testify, including witnesses who had never

---

**11.** Some of the arguments asserted by petitioner which relate to whether there was substantial evidence include, inter alia, the following: (1) that the witnesses who testified before the ALJ provided insufficient testimony; (2) that the evidence supplied by respondents at the hearing before the ALJ was insufficient to establish several of the alleged charges; (3) that the Liquor Authority failed to consider any evidence or testimony on the subject of the propriety of the penalty it imposed; and (4) that the evidence is insufficient to sustain the charges as it shows that petitioner acts no different than the other farm wineries, and that all wineries provide some type of music or other entertainment for its customers.

testified before the ALJ, with no opportunity for cross-examination by petitioner, and without prior notice of such hearing. (Verified petition ¶¶ 43, 44.)

Petitioner further maintains that it was an error of law for the ALJ and the Board to determine that petitioner violated its "farm winery" license, and that it was no longer a "bona fide business," by, inter alia, conducting alleged dance parties with disc jockey (DJ) music in the absence of any law, rule or regulation prohibiting such alleged improper activities or defining "what is a farm winery" and "what is a wine tasting." Petitioner argues that without appropriate statutory or regulatory criteria on conduct that may lead to revocation of a farm winery license, or indeed, any statutory or regulatory statement of activities compatible with such a license, the Liquor Authority may not lawfully charge petitioner with conduct warranting the revocation of petitioner's farm winery license. Petitioner also asserts that its due process right to notice has been violated in that several of the charges are facially deficient because, as written, they provide insufficient information upon which petitioner can adequately use to defend itself and must be dismissed as a matter of law.

Petitioner further argues that the penalty of revocation imposed by the Liquor Authority is arbitrary, capricious and so excessive as to be "draconian," and constitutes an abuse of discretion inasmuch as petitioner has never received a violation from respondents prior to the within prosecution, and the result of revocation will be the complete shutdown of petitioner's business. Furthermore, the penalty of revocation has future consequences. Pursuant to Alcoholic Beverage Control Law § 113 (1), "[w]here a license for any premises licensed has been revoked, the liquor authority in its discretion may refuse to issue a license . . . for a period of two years after such revocation, for such licensed premises or for any part of the building containing such licensed premises and connected therewith." Petitioner maintains that the activity complained of ended over a year ago and that it currently has approximately a million dollars' worth of grapes, which will be destroyed if petitioner is forced to shut down its business, as well as employing at least 20 people at the vineyard, all of whom will be unemployed. (Oral argument tr at 28-29.)

In opposition to petitioner's order to show cause and verified petition, respondents only submit an "Answer" containing, in essence, general denials to the 219 paragraphs asserted in the petition and virtually ignoring all of the legal arguments as-

serted by petitioner,[12] without a memorandum of law or affidavit/affirmation.[13] Rather, respondents merely assert that "petitioner incorrectly claims that the legal standard of review is arbitrary and capricious . . . [and that] [p]ursuant to CPLR § 7804 (g), where, as here, the substantial evidence question is raised, the court shall make an order directing that the proceeding be transferred to the Appellate Division . . . ." (Respondents' answer ¶ 33.)

B. Standard of Review

It is well settled that judicial review of an administrative determination is limited to whether the determination was made "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." (CPLR 7803 [3].) Additionally, pursuant to CPLR 7803 (4), a court may review whether an administrative determination made after a hearing at which evidence was taken, pursuant to direction by law, is supported by substantial evidence, and in such instance, the proceeding shall be transferred to the Appellate Division for review. However, where there has been a hearing and issues of substantial evidence have been raised, prior to a transfer to the Appellate Division, the trial court has an obligation to dispose of any legal issues which may be dispositive and sufficient to terminate the proceeding, such as the due process violations raised herein. (*See* CPLR 7804 [g].)

Thus, respondents' insistence that this case must be transferred to the Appellate Division at this juncture[14] ignores the well settled law which requires that, prior to any transfer to the Appellate Division with respect to issues involving substantial evidence, the trial court "shall first dispose of such other objections as could terminate the proceeding, including but not limited to lack of jurisdiction, statute of limitations and res judicata, without reaching the substantial evidence issue." (CPLR 7804 [g].) Here, as indicated, while petitioner has asserted numerous arguments which relate to the sufficiency of

---

**12.** The court notes that respondents have also submitted the 1,158-page transcript to the ALJ hearing, but have not made specific references to any of the relevant sections.

**13.** The only cases cited in respondents' answer relate to a transfer of this case to the Appellate Division and ignore petitioner's core legal contentions.

**14.** Respondents have only focused on one argument, asserted in their answer, insisting that this case must be transferred to the Appellate Division, and have utterly failed to refute any of petitioner's arguments.

the evidence, petitioner has also asserted significant arguments relating to violations of lawful procedure and issues of law including due process violations and the abuse of discretion as to the "draconian" nature of the penalty imposed, which must first be addressed by this court, prior to any transfer to the Appellate Division, as such claims, which are entirely unrefuted by respondents in their opposing papers, could be "dispositive and sufficient to 'terminate' th[e] proceeding within the meaning of CPLR 7804 (g)." (*Matter of Cannings v State of N.Y. Dept. of Motor Vehs. Appeals Bd.*, 84 AD3d 610, 610 [1st Dept 2011], citing *Earl v Turner*, 303 AD2d 282, 282 [1st Dept 2003], *lv denied* 100 NY2d 506 [2003] [the Appellate Division held that transfer of the article 78 proceeding was properly denied by the Supreme Court because petitioner's due process claims were sufficient to terminate the proceeding]; *see also McCarter v Franco*, 227 AD2d 358 [1st Dept 1996] [transfer to the Appellate Division was properly denied because hearing before administrative law judge did not meet due process requirements]; *Matter of Inner Circle Rest. v New York State Liq. Auth.*, 30 NY2d 541 [1972] [as petitioner was denied a full hearing, the issue of whether there was substantial evidence to support the determination by the Authority need not be reached].) Thus, a transfer to the Appellate Division is not warranted.

Having decided that a transfer to the Appellate Division is not warranted, prior to addressing the numerous legal arguments made by petitioner in its moving papers, the court notes that respondents, in its laser-like focus on their one legal argument asserted in their answer insisting that this case must be transferred to the Appellate Division, have utterly failed to refute any of petitioner's core legal arguments.[15]

## C. Due Process

It is well settled that the fundamental requirements of due process, adequate notice and a fair hearing, are applicable to administrative proceedings, as well as to licensing. (*See Matter of Alvarado v State of N.Y., Dept. of State, Div. of State Athletic Commn.*, 110 AD2d 583 [1st Dept 1985]; *Matter of Cassidy v New York City Dept. of Correction*, 95 AD2d 733 [1st Dept 1983]; *Matter of Fanon Rest. Corp. v New York State Liq. Auth.*, 178 AD2d 350 [1st Dept 1991]; *Matter of Deli Food Grocery Corp. v Silva*, 259 AD2d 345 [1st Dept 1999].) Notwithstanding that a

---

**15.** As stated, they have submitted, in essence, only a general denial.

liquor license is a privilege, not a right, "[m]erely calling a liquor license a privilege does not free the municipal authorities from the due process requirements in licensing and allow them to exercise an uncontrolled discretion . . . Indeed, the great social interest in the liquor industry makes an exceptionally strong case for the adherence to proper procedures." (*Hornsby v Allen*, 326 F2d 605, 609 [5th Cir 1964].)

With respect to notice, it is a fundamental requirement of due process that governing statutes "must give persons of ordinary intellect reasonable notice of the proscribed conduct." (*Matter of Addei v State Bd. for Professional Med. Conduct*, 278 AD2d 551, 552 [3d Dept 2000]; *see also People v New York Trap Rock Corp.*, 57 NY2d 371 [1982].) As stated by the Court of Appeals, "[t]o this end, nothing less than 'adequate warning of what the law requires' will do." (*People v New York Trap Rock Corp.*, 57 NY2d 371, 378 [1982] [citations omitted].)

> "Of equal concern is the prevention of arbitrary and discriminatory enforcement by requiring boundaries sufficiently distinct . . . to fairly administer the law . . . [a]s common sense and experience both tell us, unless by its terms a law is clear and positive, it leaves virtually unfettered discretion in the hands of law enforcement officials." (*Id.* at 378-379 [internal quotations marks and citations omitted].)

Further,

> "due process precludes the deprivation of . . . substantial rights in an administrative proceeding because of uncharged misconduct . . . and it necessarily follows, therefore, that a respondent in such a proceeding is entitled to fair notice of the charges against him or her so that he or she may prepare and present an adequate defense and thereby have an opportunity to be heard." (*Whitbread-Nolan, Inc. v Shaffer*, 183 AD2d 610, 611-612 [1st Dept 1992] [internal quotation marks and citations omitted].)

## 1. An Additional Hearing without Due Process—the December 17, 2013 Board Meeting

### a. Requirements of the State Administrative Procedure Act and Liquor Authority Rules and Regulations

In order to ensure the application of due process protections to administrative proceedings, the state legislature enacted the

New York State Administrative Procedure Act, applicable to adjudicatory hearings, such as the one reviewed herein. (*Matter of Alvarado*, 110 AD2d at 584-585.) In accordance with the State Administrative Procedure Act, parties who are subject to a disciplinary hearing must be given reasonable notice of such hearing, as well as, inter alia, an opportunity to cross-examine testifying witnesses. (*See* State Administrative Procedure Act §§ 301, 306.)

Additionally, the New York State Liquor Authority has enacted rules applicable to disciplinary proceedings commenced with respect to liquor licenses, which expressly provide for, inter alia, notice of any hearing and cross-examination of witnesses testifying at such hearings. (9 NYCRR 54.3 [a]; 54.4 [b].) Thus, both the State Administrative Procedure Act and the Liquor Authority Rules require notice and the right to cross-examine witnesses.

Further, according to the Authority's Rules, after a disciplinary proceeding has been commenced in which a licensee has pleaded "not guilty" to the charges, a hearing shall be conducted "by a member of the authority or any employee of the authority duly designated by the authority to hold hearings, who shall be known as the administrative law judge." (9 NYCRR 54.2 [a]; 54.4 [a].) "After the conclusion of the hearing, the [ALJ] shall make, in writing, his [or her] findings as to whether the evidence sustained the charges." (9 NYCRR 54.4 [g].)

Thereafter, "[t]he record [of the hearing] shall be referred, together with the [ALJ's] report and any statement controverting the findings contained therein, for due consideration and appraisal by the authority at a meeting duly held by it." (*Id.*) The "record" is specifically defined by the Authority's Rules as: "(1) the stenographic notes taken in the hearing by a stenographic reporter, including the transcribed minutes thereof, or (2) the testimony and other evidence taken at the hearing as recorded by electronic recording equipment or the transcription thereof." (9 NYCRR 54.5 [a].) "The record shall be kept in the room and available [for] the use of the members of the authority at the time a determination of such proceeding or hearing is being made by them." (*Id.*) Significantly, "[u]pon due application to the authority [or upon its own motion] prior to its determination, the authority may, in its discretion, reopen the hearing for the presentation of new or additional evidence[,] [however] [s]uch [an] application must set forth concisely the nature of this additional evidence." (9 NYCRR 54.4 [c] [3].)

Thus, in order to comply with the law as set forth in the State Administrative Procedure Act and the Rules and Regulations of the Authority, notice and cross-examination must have been provided. (*See* 9 NYCRR 54.1, 54.3, 54.4 [b].) Further, petitioner was entitled to a decision made by the Board solely based upon a review of the record which consisted of the ALJ's decision, any statement controverting the ALJ's findings and the transcript of the ALJ hearing, including the evidence taken at such hearing, unless the hearing was reopened and specific notice given as to the new additional evidence. (State Administrative Procedure Act §§ 301, 306; 9 NYCRR 54.3 [a]; 54.4 [b], [c] [3]; [g]; 54.5.)

### b. Conduct of the December 17, 2013 Meeting by the Board

■ Here, upon review of the submissions and the transcripts, it is evident that petitioner was denied due process as the State Administrative Procedure Act and the Authority's Rules were clearly violated, as detailed below. At the December 17, 2013 meeting, prior to voting to affirm the findings of the ALJ and to impose the penalty of revocation of petitioner's farm winery license, five individuals from the public were permitted to give testimony to the Board (three of whom did not testify before the ALJ, and two of whom testified previously, but were permitted to give additional testimony). Petitioner asserts that much of the testimony given at the December 17, 2013 meeting by the witnesses who had previously testified at the hearing before the ALJ contradicted such witnesses' prior testimony.[16] (Oral argument tr at 6, lines 18-20.) Moreover, such additional testimony by the five witnesses at the December 17, 2013 meeting was indisputably not part of the "record" before the ALJ, in violation of 9 NYCRR 54.5.

Further compounding the violation of due process rights, prior to the Board making its decision at the December 17, 2013 meeting, the witnesses who had testified at the earlier portion of the December 17, 2013 meeting were asked by the Chairman to again give additional unsworn testimony (without permitting petitioner to cross-examine) which was not in the "record" before the ALJ, yet relied upon by the Board in rendering its decision to revoke. In requesting that such witnesses testify for a second time at the December 17, 2013 meeting, Chairman Rosen stated:

---

**16.** The court need not reach this issue as the conduct of the board meeting, and the improper vote, violated petitioner's due process rights.

"All right. All right, I need to do something before we make a decision. Everybody, all of the residents who, just so this record is clear and I understand, I need you to come back and just say to what degree in your view the issues have settled down a little bit, that the violations, the disruption has settled down . . . in the past year to what degree and I need your honest opinions of that." (Dec. 17, 2013 tr at 59, lines 4-12.)

It is undisputed that such witnesses took no oath prior to giving their testimony; instead, the Chairman merely stated that the testifying witnesses should provide their "honest opinions," and that "this is a formal proceeding, so, you're expected to tell the truth." (Dec. 17, 2013 tr at 61, lines 24-25.)[17]

It is apparent from the remarks made by the Commissioners at the December 17, 2013 meeting, as reflected in the transcript, that they improperly considered evidence outside of the "record" (as defined by 9 NYCRR 54.5) in that the unsworn testimony given that day by both the new and previously testifying witnesses materially influenced the Board's decision to adopt the ALJ's findings and to impose the extreme penalty of revoking petitioner's farm winery license. Accordingly, petitioner was denied a fair and proper process. (*See* 9 NYCRR 54.5.) In fact, both Chairman Rosen and Commissioner Greene *expressly stated* that their decisions to sustain the ALJ's findings and revoke petitioner's license were based on the testimony heard at the December 17, 2013 meeting, elicited with no prior notice to petitioner and with no right to cross-examination. Specifically, towards the end of the proceedings before the Board on December 17, 2013, Commissioner Greene thanked the witnesses for their "testimony" (using such word) "because it gave [him] a good image, not only just reading the hearing, but what has actually occurred at this location . . . [s]o I appreciate the testimony of the individuals coming and my vote is to revoke." (Dec. 17, 2013 tr at 69, lines 17-22; at 70, lines 8-9.) After the new testimony was given at the meeting, respondent Chairman Rosen specifically stated that he was

---

**17.** The Authority's Rules provide that the Authority may in fact reopen a hearing "for the presentation of new or additional evidence" (9 NYCRR 54.4 [c] [3]). However, the procedures required to be followed at a hearing were not followed on December 17, 2013, as there is no claim that petitioner was given notice that the hearing was being reopened. In any event, petitioner was not provided an opportunity to cross-examine, as required by both the State Administrative Procedure Act and the Authority's Rules. (*See* State Administrative Procedure Act § 306 [3]; 9 NYCRR 54.4 [b] [ii].)

persuaded that "the testimony that we have got[ten] from the police chief and the residents is that these problems have not ended." (Dec. 17, 2013 tr at 71, lines 3-5.) Notably, after the new testimony was given, Chairman Rosen further stated that he gave "a lot of weight to that, that little girl over there, growing up in an environment where she's not exposed to that," referring to a 20-year-old woman, Mary Helsinki, who had not previously testified before the ALJ. (Dec. 17, 2013 tr at 55, lines 17-19.)

Thus, the Board's decision to affirm the ALJ's findings and to revoke petitioner's farm winery license was improperly based upon evidence which was not part of the record before the ALJ, in violation of the Authority's Rules. (*See* 9 NYCRR 54.4 [g]; 54.5; *49th St. Mgt. Co. v New York City Taxi & Limousine Commn.*, 277 AD2d 103, 106 [1st Dept 2000], quoting *Matter of Multari v Town of Stony Point*, 99 AD2d 838, 838 [2d Dept 1984] ["(w)here a hearing has been held, it is improper for an administrative agency to base a decision upon information outside the record because such a procedure denies the parties an opportunity to refute the outside information"]; *Matter of Spetalieri v Quick*, 96 AD2d 611 [3d Dept 1983] [improper for administrative agency to base decision of adjudicatory nature upon evidence or information outside the record]; *Matter of Muidallap v State Liq. Auth.*, 143 AD2d 9, 13 [1st Dept 1988] [memo "submitted after the proceedings (held by the ALJ) had been completed and without notice to petitioner, was not properly part of the record . . . and should not have been considered by the board"]; *cf. Matter of Nycrest Corp. v New York State Liq. Auth.*, 81 AD2d 866 [2d Dept 1981] [petitioner was not deprived of a fair and proper hearing where findings and conclusions of hearing officer adopted by the Authority did not indicate that the hearing officer was materially influenced by hearsay statements at trial and the hearsay statements did not have the effect of depriving petitioner of a fair and proper hearing].)

Additionally, it is not disputed that petitioner was not given an opportunity to cross-examine the witnesses who testified at the December 17, 2013 meeting, in violation of the Liquor Authority's Rules, which were enacted to fulfill due process constitutional protections. (*See* 9 NYCRR 54.4 [b] [1] [ii]; *Matter of Alvarado*, 110 AD2d at 584-585 [conduct of administrative hearing found to deprive petitioner of due process protections where, inter alia, petitioner did not have opportunity to

cross-examine witnesses].) This was also a violation of the State Administrative Procedure Act. (*See* State Administrative Procedure Act § 306 [3].)

Although, as indicated above, respondents failed to substantively address petitioner's argument that an illegal hearing was conducted on December 17, 2013 by its answer or any memorandum of law,[18] the Authority asserted at oral argument that an additional hearing was not in fact conducted on December 17, 2013, relying on the case of *Matter of Le Cave LLC v New York State Liq. Auth.* (107 AD3d 447 [1st Dept 2013]). (Oral argument tr at 15, lines 3-26; at 16, lines 2-6.) *Le Cave LLC*, however, provides little guidance to this court, as it is a mere four short paragraph discussion and provides very few facts. In fact, it only addresses the issue of improper consideration of evidence outside of the record in one sentence, without any specifics. Thus, it is not clear from the decision precisely what was argued to such court and the facts the court relied upon in rendering the decision. Significantly, there is no indication in *Le Cave LLC* that the voting board members actually relied upon the testimony heard at the meeting or the nature of the additional evidence allegedly considered. In contrast, as addressed previously, here, it was plainly admitted by the voting commissioners at the December 17, 2013 meeting that they both relied on the additional unsworn testimony elicited at the meeting (which was not subjected to cross-examination) in rendering their decision, in violation of the State Administrative Procedure Act and the Authority's own rules, and a number of the witnesses who testified before them at the meeting had not testified at the ALJ hearing.[19] Additionally, notwithstanding that the Liquor Authority's website indicates that the public may speak at meetings before the Board, the Authority's own rules prohibit determinations of the Board from being based on any such additional testimony because it does not constitute part of the "record" before the

---

**18.** As previously indicated, respondents did not provide a memorandum of law in this article 78 proceeding.

**19.** It is noted that the *Le Cave LLC* court affirmed the revocation of the petitioner's liquor license, for, inter alia, assaults and violations of fire and safety regulations, finding that such penalty did not shock one's sense of fairness because the record showed that petitioner had a *lengthy history* of violations. Here, however, it is undisputed that there is no prior history of violations or enforcement of petitioner and it also appears that petitioner has taken steps to alleviate the issues complained of. (*Le Cave LLC*, 107 AD3d at 448.)

ALJ, as defined by 9 NYCRR 54.5, on which the Board must solely base its decision (*See* 9 NYCRR 54.4 [g].) Further, a statement on the Authority's website is not a duly promulgated rule or regulation, to which a licensee is bound.

Thus, the Board's consideration of and resting its decision on new evidence outside the record constitutes a significant violation of petitioner's due process rights, protected by the State Administrative Procedure Act and the Authority's own rules. (*See* State Administrative Procedure Act § 306; 9 NYCRR 54.4 [g].) The Board's decision to sustain the charges and revoke petitioner's license was not the result of a "due consideration and appraisal" of "[t]he record . . . together with the [ALJ's] report and any statement controverting the findings contained therein," as required by 9 NYCRR 54.4 (g), but, rather, upon the taking of new and additional testimony, at an unnoticed second hearing, with unsworn witnesses and no right to cross-examination. This was not simply a matter of the Board permitting the witnesses who testified before the ALJ to repeat parts of their prior testimony made before the ALJ, but the eliciting of entirely new testimony, from new witnesses, who had never testified before, without petitioner having the opportunity to cross examine, with the Commissioners explicitly indicating on the record that they relied on such new testimony taken at the meeting in basing their vote. The Board's action violated the Rules of the Authority, the State Administrative Procedure Act and petitioner's fundamental right to due process.

## D. Charges Five and Six: Subjective Definitions of Farm Winery/Wine Tastings Cannot be a Basis for Imposing a Penalty

As stated above, petitioner maintains that the charges imposed against it, and the Board's decision to affirm the ALJ's findings and to revoke its license, were based upon the Board's arbitrary disapproval of the type of wine tastings that petitioner winery had been conducting, which at times included, inter alia, DJ music, dancing and a party-type atmosphere, notwithstanding that it is indisputably in compliance with the only statutes which govern and define "farm winery" and "wine tastings." (*See* Alcoholic Beverage Control Law §§ 3 [12-a]; 76-a [3] [c].) In fact, petitioner was not charged with violating the relevant statutes.

While there are significant factual disputes with respect to practices of petitioner winery and the way in which it

conducts its wine tastings,[20] petitioner does not dispute that, at times, the winery engaged a DJ to play music and it permitted dancing. The crux of petitioner's legal arguments, however, is that, because the governing statutes, rules and regulations do not define "what is a farm winery," beyond Alcoholic Beverage Control Law § 3 (12-a), and what is a legally acceptable "wine tasting," besides Alcoholic Beverage Control Law § 76-a, it is arbitrary and capricious, a violation of petitioner's due process rights and an error of law for the Liquor Authority to punish it for its alleged improper conduct (i.e. hiring a DJ to play music and permitting dancing), when it had no prior notice that such conduct is prohibited by statute, rule or regulation or that such conduct would result in the revocation of its farm winery license.[21] Significantly, in opposition to the legal issues raised by petitioner, as indicated above, the Authority failed to provide a memorandum of law or any law to refute petitioner's position. As explained below, this court agrees with petitioner and its arguments.

It is undisputed that petitioner has not violated the Alcoholic Beverage Control Law in that the relevant statutes do not prohibit the alleged conduct charged. This is confirmed by an examination of the relevant statutes. Section 3 (12-a) of the Alcoholic Beverage Control Law provides a definition of a "farm winery," but merely indicates that a "[f]arm winery means and includes any place or premises, located on a farm in New York state, in which wine is manufactured and sold" (internal quotation marks omitted). There is no dispute herein that petitioner is in compliance with the only definition of "farm winery," contained in the Alcoholic Beverage Control Law.

Additionally, section 76-a of the Alcoholic Beverage Control Law governs the usage of a farm winery license and provides, inter alia, that farm wineries may conduct wine tastings of New York State labeled wines, subject to certain minimal limitations. (*See* Alcoholic Beverage Control Law § 76-a [3].) As to what constitutes a "wine tasting" according to the Alcoholic Beverage Control Law, section 76-a (3) (c) merely provides that

> *"[t]astings shall be conducted subject to the following limitations:*

---

**20.** Much of the factual disputes relate to the issue of whether there was substantial evidence to support the determination by respondents, which as explained above, is not for this court's review. (*See* CPLR 7803 [4]; 7804 [g].)

**21.** The court notes that petitioner also alleged the same legal/due process arguments before the ALJ, as provided in petitioner's "Brief for Licensee" dated October 3, 2013. (Exhibit 4, respondents' answer.)

"(i) *wine tastings shall be conducted by an official agent, representative or solicitor of one or more farm wineries. Such agent*, representative or solicitor *shall be physically present* at all times during the conduct of the tastings; and

"(ii) any liability stemming from a right of action resulting from a wine tasting as authorized herein . . . shall accrue to the farm winery." (Emphasis supplied.)

Thus, the only legal requirement as to how a farm winery is to perform its wine tastings so as to be in compliance with existing law appears to be that such tastings be conducted by an official agent of the winery, who shall be physically present during the tasting. (Alcoholic Beverage Control Law § 76-a [3] [c].) It is notable that no other guidance or criteria with respect to what constitutes a legal and proper wine tasting appears to exist, either in the Alcoholic Beverage Control Law, the Authority's Rules, or in any advisory opinions issued by the Authority.

Although at the December 17, 2013 board meeting Chairman Rosen stated "we have documents on our website that are publicly available that the Board has issued giving very good guidance with respect to wine tastings" (tr at 5, lines 9-13), such alleged "documents" have not been supplied to this court and, in this court's review of the website, do not appear to exist. Notably, however, this court was able to locate on the Liquor Authority's website a *single* newsletter published over six years ago which is quite telling as to the Authority's admitted lack of clarity as to what conduct is permissible during a wine tasting: "The laws governing tastings can seem very confusing, even for those of us who deal with them on a daily basis . . . Unfortunately, there is no definition in the Alcoholic Beverage Control . . . Law of a 'tasting.' " (Thomas Donohue, *Beer, Liquor & Wine Tastings*, NY St Liquor Authority/Alcoholic Beverage Control News, vol 11, No. 3 [summer 2008], available at http://www.sla.ny.gov/system/files/Summer2008-Final-3.pdf [accessed Oct. 30, 2014].)[22]

Notably, neither the notice of charges, nor the decision of the ALJ indicate that petitioner in fact violated Alcoholic Beverage

---

**22.** In the article titled *Beer, Liquor & Wine Tastings*, counsel to the Authority wrote, inter alia, as follows:

"The Authority receives many inquiries from licensees . . . as well as the general public regarding circumstances under which

Control Law § 76-a (3) (c) (the agent requirement), which is the only statute regulating wine tastings at farm wineries. Nor did the notice of charges, decision of the ALJ, or the determination by the Board indicate a violation of a rule or regulation specific to farm wineries or the conduct at a wine tasting, as there concededly are none.

Moreover, pursuant to Alcoholic Beverage Control Law § 76-a (4) (d), the activities that a farm winery may legally engage in are extremely broad, as such statute provides, in relevant part, as follows: "[a] licensed farm winery may engage in *any . . . business on the licensed premises subject to such rules and regulations as the liquor authority may prescribe.*" (Emphasis supplied.) The Liquor Authority has not pointed to any rules, nor regulations that it has promulgated, which would bar the conduct complained of.

As stated, petitioner essentially argues that the core of the charges imposed against it are based upon respondents' objection that petitioner's alleged activities and the atmosphere at petitioner's winery are inconsistent with respondents' subjective view of what is a "farm winery" or what constitutes a "wine tasting." As provided in the amended notice of pleadings, petitioner has been charged with, and determined by the Board to be engaging "in certain conduct, to wit: the establishment licensed as a [f]arm [w]inery has been continually operating as a night club including DJ and a dance party type atmosphere" (charge five in the amended notice of pleading) and that "the

a . . . wine tasting can be conducted. *The laws governing tastings can seem very confusing, even for those of us who deal with them on a daily basis.* The purpose of this article is to provide some clarification of those laws. Before we can discuss the 'rules of the road' for tastings, there needs to be an understanding of what a 'tasting' is. Unfortunately, there is no definition in the Alcoholic Beverage Control . . . Law of a 'tasting.' " (Thomas Donohue, *Beer, Liquor & Wine Tastings*, NY St Liquor Authority/ Alcoholic Beverage Control News, vol 11, No. 3 [summer 2008], available at http://www.sla.ny.gov/system/files/Summer2008-Final-3.pdf [accessed Oct. 30, 2014] [emphasis supplied].)

Counsel to the Authority continues in such article, writing that *"[t]he 'rules of the road' regarding wine tastings are probably the most difficult to explain and understand because there are more variables."* (*Id.* [emphasis supplied].)

While the article boasts that its "purpose . . . is to provide some clarification of [the] laws" governing tastings, a review reveals no real instructive information, other than to merely supply the telephone number for the Office of Counsel for questions. Regardless, such a newsletter contained on a website is not a statute, rule or regulation, a violation of which could result in the imposition of a penalty against the licensee.

licensed premises has ceased to be operated as a bona fide premises within the contemplation of the license issued for such premises" (charge six in the amended notice of pleading). In essence, respondents complain about the manner in which petitioner conducts its wine tastings. However, assuming arguendo that petitioner's tasting activities include the use of a DJ, dancing and engaging in a party-type atmosphere, as detailed above, respondents' objections and enforcement must fail as there are no statutes, rules or regulations defining the types of activities which are prohibited or appropriate with respect to wine tastings.

As indicated above, petitioner is not charged with violating Alcoholic Beverage Control Law § 3 (12-a), which defines farm winery, or Alcoholic Beverage Control Law § 76-a, which governs wine tastings. In fact, it is unrefuted that petitioner winery is in compliance with both statutes. Chairman Rosen stated at the December 17, 2013 meeting that "I think I know what a wine tasting is," and that "I think we've given guidance to the industry as to what a wine tasting is" and that "I think it's out in a statute too,"[23] yet, the parties have not supplied, and the court has been unable to locate, any applicable statute, rule, regulation or advisory opinion as to what constitutes a statutorily or regulatorily acceptable wine tasting other than Alcoholic Beverage Control Law § 76-a (3) (c), which, as stated, petitioner has not been charged with violating.[24] (Dec. 17, 2013 tr at 47, lines 20-22; at 48, lines 6-8.)

Moreover, as correctly argued by petitioner, while the Alcoholic Beverage Control Law specifically *requires* that the Liquor Authority "*shall* promulgate rules and regulations regarding . . . [wine] tastings" (Alcoholic Beverage Control Law § 76-a [3] [a] [emphasis supplied]),[25] to date, no rules or

---

**23.** As previously detailed, the only "guidance" found on the website is a confirmation that the law governing tastings is "very confusing" and a telephone number for questions. (*See* n 22, *supra*.)

**24.** The court notes that respondents have supplied, in a supplemental submission, a copy of the Liquor Authority's Advisory Opinion No. 2013-6, which states the subject of such advisory as follows: "[t]astings and 'sales by the bottle' conducted by manufacturers, importers and wholesalers"; such advisory, however, does not provide information as to what constitutes a wine tasting conducted at or by a farm winery.

**25.** Alcoholic Beverage Control Law § 76-a (3) (a) provides in relevant part as follows:

"Any person having applied for and received a license as a farm winery . . . may conduct wine tastings of New York state

regulations have been implemented by the Authority with respect to farm winery wine tastings.[26]

As previously indicated, the activities permitted by Alcoholic Beverage Control Law § 76-a (4) (d) are extremely broad. That section allows a farm winery to engage in "any other business," only subject "to such rules and regulations as the liquor authority may prescribe."[27] However, the Authority has yet to promulgate any rules or regulations with respect to the types of businesses a farm winery may engage in on a licensed premises. Nonetheless, petitioner has been charged with, and had its license revoked for, operating an alleged illegal business in violation of its farm winery license (i.e. a "night club"), which has not been prohibited by any statute, rule or regulation. This failure of the Authority to enact appropriate regulating rules governing farm wineries and acceptable conduct with respect to tastings, deprives petitioner of appropriate notice as to what is prohibited so that it may conform its conduct to specified requirements. Such failure permits the Authority to selectively and arbitrarily prosecute certain wineries based upon a subjective, undefined and varying standard and criteria not readily available to the licensee or the public.

Properly enacted rules and regulations undergo a rigorous process in which there is a public comment period, which provides for deliberation, scrutiny and notice. (*See* State

---

labelled wines . . . Such farm winery may charge a fee for each wine sample tasted. The state liquor authority shall promulgate rules and regulations regarding such tastings as provided for in this subdivision."

**26.** 9 NYCRR 63.11 is applicable to wine tastings in liquor stores, and not to tastings conducted at farm wineries.

**27.** Alcoholic Beverage Control Law § 76-a (4) (d) provides in relevant part as follows:

"A licensed farm winery may engage in any other business on the licensed premises subject to such rules and regulations as the liquor authority may proscribe. In prescribing such rules and regulations, the liquor authority shall promote the expansion and profitability of wine production and of tourism in New York, thereby promoting the conservation, production and enhancement of New York state agricultural lands. Further, such rules and regulations shall determine which businesses will be compatible with the policy and purposes of this chapter and shall consider the effect of particular businesses on the community and area in the vicinity of the farm winery licensee."

Administrative Procedure Act § 202 [1].)[28] Such rules and regulations offer clear accessible guidelines to the affected members of the community and licensee holders as to what is and what is not permissible and encourages consistent enforcement, as opposed to potentially arbitrary application. The issuance of regulations also ensures that the administrative agency, as well as reviewing courts, are provided with objective guidelines, so as to gauge whether the particular conduct is acceptable and within the bounds of the law. Without promulgated criteria, a licensee is unable to conduct its business to be in compliance with what is expected of such a licensee. While the Commissioner claims that he knows what a wine tasting is,[29] unless petitioner and the wine making community are also mind readers, his personal and subjective opinion of what constitutes a wine tasting fails to provide sufficient notice to petitioner and the community as to how to conduct wine tastings, such that their licenses and the complete shutdown of their businesses are not at stake. To the extent that the Commissioner claimed that he thought the definition and or standard was contained in a statute, as stated, respondents have not put forth any controlling statute, rule or regulation defining such terms.[30]

Thus, this court concludes that, while petitioner has been charged with, inter alia, engaging "in certain conduct, to wit: the establishment licensed as a Farm Winery has been continually operating as a night club including DJ and a dance party type atmosphere" (charge five in the amended notice of pleading) and that "the licensed premises has ceased to be operated as a bona fide premises within the contemplation of the license issued for such premises" (charge six in the amended notice of pleading), such charges fail to specify conduct by petitioner which is violative of any specific statute, regulation or rule

---

**28.** State Administrative Procedure Act § 202 (1) is titled "Notice of proposed rule making" and provides, inter alia: "[1.] (a) [p]rior to the adoption of a rule, an agency shall submit a notice of proposed rule making to the secretary of state for publication in the state register and shall afford the public an opportunity to submit comments on the proposed rule."

**29.** As indicated, at the December 17, 2013 meeting before the Board, Chairman Rosen stated that "I think I know what a wine tasting is." (Dec. 17, 2013 tr at 47, lines 20-22.)

**30.** As indicated, respondents failed to provide the court with a memorandum of law and their counsel failed to argue that such law, rule or regulation exists.

enacted by the Authority.[31] It is undisputed that there are no statutes, rules or regulations that prohibit the use of DJs, dancing and music in connection with a wine tasting. If the Liquor Authority seeks to pass rules and regulations prohibiting such conduct, it is free to do so. (*See Chrisley v Morin*, 126 AD2d 977, 978 [4th Dept 1987] ["promulgate(d) rules and regulations . . . ensure uniform and constitutionally acceptable treatment to those concerned"].) Given the vagueness of charges five and six imposed, in which there is no specific allegation that petitioner has violated a particular statute, rule or regulation which prohibits the use of music, DJs or dancing, charge five and charge six are dismissed as legally insufficient. The Board's sustaining of such charges and the imposition of a penalty based upon those charges constituted an error of law, was arbitrary and capricious and an abuse of discretion.

It is noted that while petitioner argues that it presented to the ALJ significant evidence that it acts no differently than other farm wineries and that all farm wineries provide some type of music or other type of entertainment for its customers, that argument relates to the issue of substantial evidence and is not within this court's purview for review (as previously explained). If true, however, it does point to the need for clear rules and regulations prescribing acceptable wine tasting practices.

E. Charge Two: Insufficient Notice of the Charge

■ Additionally, as correctly argued by petitioner, charge two (that petitioner violated Alcoholic Beverage Control Law § 110 [4] by failing to notify the Liquor Authority "of a change in facts . . . concerning other businesses and other activities conducted on the licensed premises") is facially deficient and warrants dismissal as a matter of law. Petitioner claims that the description in charge two fails to provide adequate notice, sufficient to defend such charge, in violation of petitioner's right to due process. As indicated previously, respondents have not directly refuted or even addressed petitioner's legal claims, including petitioner's challenge to charge two.[32] "[I]t is axiomatic that due process precludes the deprivation of . . .

---

31. To the extent such conduct is violative of any local community or zoning laws regulating such alleged "night club" type conduct, it is not an issue before this court. Nothing in this decision bars such authorities from enforcing such laws.

32. In the court's opinion, a number of the other charges fall into this facially deficient category, however, petitioner does not argue this. In the

substantial rights in an administrative proceeding because of uncharged misconduct . . . and it necessarily follows, therefore, that a respondent in such a proceeding is entitled to fair notice of the charges against him or her so that he or she may prepare and present an adequate defense and thereby have an opportunity to be heard." (*Whitbread-Nolan, Inc. v Shaffer*, 183 AD2d 610, 611-612 [1st Dept 1992] [internal quotation marks and citations omitted]; *see also Matter of Alvarado*, 110 AD2d at 584 [in concluding a notice in an administrative proceeding was defective because it failed to contain, inter alia, the nature of the hearing, the First Department stated that "(a)n elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections"]; *Matter of Chant v Department of State of State of N.Y.*, 60 AD2d 535 [1st Dept 1977] ["(t)he failure to give notice of the charges . . . was violative of administrative due process"].)

In *Matter of With v Sarafan* (70 AD2d 830, 831 [1st Dept 1979]), the Appellate Division, First Department made it clear in dismissing the disputed charge and remanding to the agency on the issue of penalty that, notwithstanding that the evidence adduced at the administrative hearing "sustained a violation" of the rule, the original notices "made no reference to that rule, and made no reference to the facts of the case from which violation of that rule could be inferred."[33] Here, the only rule referred to in the charge (Alcoholic Beverage Control Law § 110 [4]) is a catchall rule, not related to wine tastings or farm

---

court's reading of the four corners of a number of the charges, it is not clear what petitioner is being charged with, as no facts have been supplied and only conclusory statements of violations are provided, making it difficult, if not impossible, to defend. Given that it has not been raised by petitioner, the court shall not address or dismiss other charges on this ground.

**33.** Moreover, it does not appear that, pursuant to the State Administrative Procedure Act, petitioner need necessarily ask for a bill of particulars if the notice is insufficient and does not contain "a short and plain statement of those matters alleged to be in violation," as "the respondent [b]oard had the primary responsibility of giving adequate notice of the charges. Its dereliction in that regard resulted in a deprivation of due process and warrants an annulment of the [b]oard's determination." (*Matter of With v Sarafan*, 70 AD2d at 832 [Murphy, P.J., dissenting].)

wineries per se, but, is merely an administrative reporting rule.[34]

Further, significantly absent from charge two, is a "short and plain statement of matters asserted," as specifically required by State Administrative Procedure Act § 301 (2) (d). In fact, there is not a single allegation or description of fact contained in the charge which could provide petitioner with notice of what "other businesses and other activities" petitioner was allegedly conducting in violation of Alcoholic Beverage Control Law § 110 (4), so that it would be properly afforded a full and fair opportunity to mount a defense against the revocation of its license. As correctly argued by petitioner, it cannot be expected or compelled to prepare a defense against all possibilities which the Authority may ultimately prosecute.[35] Based upon the limited language of the charge provided in the amended notice of pleading, petitioner would have no idea what "un-noticed business" provides the basis for such charge.

In their silence as to petitioner's argument with respect to charge two, respondents have not argued that such charge is "sufficiently detailed," as described in State Administrative Procedure Act § 301 (2) (d), or that petitioner previously waived any objection to such charge. Nor have respondents argued that they cured any deficiencies, prior to the hearing before the ALJ, such that petitioner was able to adequately prepare a defense. Accordingly, this court is constrained to dismiss charge two based upon petitioner's arguments.[36]

---

**34.** Alcoholic Beverage Control Law § 110 (4) provides as follows:
"If there be any change, after the filing of the application or the granting of a license, in any facts required to be set forth in such application, a supplemental statement giving notice of such change, cost and source of money involved in the change, duly verified, shall be filed with the authority within ten days after such change. Failure to do so shall, if willful and deliberate, be cause for revocation of the license."

**35.** Petitioner licensee points out that "other activities" complained of could be anything, including hiring a DJ, dancing, charging for wine tastings, selling liquor out of buckets, cigar sales, or an infinite number of possibilities making it impossible to defend against.

**36.** Should this decision be appealed, undoubtedly respondents will try to assert arguments which they did not assert before this court, since, as noted repeatedly above, respondents' submissions merely consisted of an eight-page answer containing mainly general denials, without a memorandum of law, or affidavit/affirmation in opposition to the relief sought by petitioner in the order to show cause and verified petition. Additionally, as noted, the cases cited by respondents in their answer (rather than in a memorandum of law), refer

Moreover, as stated earlier, Alcoholic Beverage Control Law § 76-a (4) (d) broadly permits a farm winery to engage in "any other business . . . subject to such rules and regulations as the liquor authority may prescribe." Thus, charge two of the amended notice of pleading which lacks a "short and plain statement of matters asserted" as required by State Administrative Procedure Act § 301 (2) (d) is dismissed as facially deficient and violative of due process.

## F. Penalty

■ It is undisputed that this is the first instance in which the Authority has revoked a farm winery license (oral argument tr at 31, lines 14-17; at 32, lines 2-6). Moreover, as this is the first prosecution of any charges against petitioner winery by the Authority, and given that three out of the six sustained charges have been dismissed herein, the penalty of revocation is annulled and, upon remand, the Authority shall impose a lesser penalty consistent with this decision.

As noted previously, petitioner argues that the result of the penalty of revocation will be the complete shutdown of petitioner's business, which is not disputed. Petitioner maintains that the activity complained of ended over a year ago and that it currently has approximately a million dollars' worth of grapes, which will be destroyed if petitioner is forced to shut down its business, as well as employing at least 20 people at the vineyard, all of whom will be unemployed. (Oral argument tr at 28-29.) Furthermore, the penalty of revocation has future consequences. Pursuant to Alcoholic Beverage Control Law § 113 (1), "[w]here a license for any premises licensed has been revoked, the liquor authority in its discretion may refuse to issue a license . . . for a period of two years after such revocation, for such licensed premises or for any part of the building containing such licensed premises and connected therewith." Even were this court not dismissing three of the charges, the extreme penalty of revocation of a farm winery license, on the undisputed facts of this case, including the absence of any prior prosecutions of violations or notice of objectionable conduct, would be so excessive as to shock the court's sense of fairness. (*See Matter of 7th Ave. & Grove St.*

primarily to the transfer of this case to the Appellate Division and not to the numerous legal arguments asserted by petitioner in its 219-paragraph verified petition. As such, any arguments by respondents that they cured the deficiencies as to charge two so that petitioner was able to properly prepare a defense have been waived.

*Corp. v New York State Liq. Auth.*, 215 AD2d 107, 108 [1st Dept 1995].)

In *Matter of 7th Ave. & Grove St. Corp.*, a case far more egregious on its facts than this case, the First Department held that "the penalty of revocation . . . may be so excessive as to shock [the] sense of fairness," even where

> "[t]he evidence included a petition signed by 109 neighbors complaining of the noise, the testimony of four neighbors concerning the frequency and volume of the music emanating from the premises and the obstruction of pedestrian traffic caused by patrons on the sidewalk in front, . . . [as well as] that fines had been imposed against petitioner for four separate noise violations, and Police Department records showing that summonses had been issued to petitioner for loud noises and for a large disorderly crowd outside the premises." (*Id.*; *see Matter of Northwood Foods Corp. v New York State Liq. Auth.*, 208 AD2d 633 [2d Dept 1994] [determining that revocation of liquor license was an excessive penalty, even though it was petitioner's *third* violation of the Alcoholic Beverage Control Law]; *cf. Matter of Monessar v New York State Liq. Auth.*, 266 AD2d 123 [1st Dept 1999] [determining that penalty of license cancellation did not shock sense of fairness, being it was petitioner's *fourth* violation of the Alcoholic Beverage Control Law in a period of less than two years].)

In *Matter of Georgian Motel Corp. v New York State Liq. Auth.* (206 AD2d 761 [3d Dept 1994]), the Appellate Division, in affirming the Supreme Court's determination that the penalty of revocation was excessive and "unnecessarily harsh," indicated that, although they considered the charges, which included felony convictions of one of the principals, to be "quite serious,"[37] nonetheless, similar to the proceeding herein, "petitioner's record with respondent otherwise was untarnished," and the court found that such petitioner, as well as the residents of Lake George where the motel was located,

---

**37.** The petitioner in *Georgian Motel Corp.* was charged with the following more serious violations of the Alcoholic Beverage Control Law to which the petitioner pleaded no contest: (1) the guilty plea of one of petitioner's directors, to the crimes of criminal possession of a controlled substance in the fourth degree and conspiracy in the fourth degree; (2) petitioner's alteration of the licensed premises without permission; and (3) and (4) petitioner's failure to report on its renewal applications, certain financial transactions.

"would incur a substantial loss, both in terms of actual jobs and tourism revenues, if petitioner's license was revoked." (*Id.* at 763.)

Additionally, the First Department, in *Matter of Vicky's Grocery v New York State Liq. Auth.* (213 AD2d 206 [1st Dept 1995]), affirmed the Supreme Court's annulment of the penalty imposed by the Liquor Authority which revoked petitioner's license to sell beer and imposed a $1,000 bond forfeiture, holding that the penalty of revocation of a liquor license was shockingly disproportionate to the offense and an abuse of discretion, where, inter alia, the licensee, who had invested his lifetime savings in the establishment, was not personally involved in the sales and, similar to the within case, there was no showing of an intent to violate the law.

Significantly, in deciding that revocation was inappropriate, the First Department in *Vicky's Grocery*, specifically took note of the fact that "prior to the hearing the Authority itself advised petitioner that it would accept a 60-day suspension and $1,000 bond forfeiture to dispose of the charges." (*Id.* at 206.) Revocation is similarly inappropriate here, as the record of the meeting before the Board on December 17, 2013 indicates that, at a time when petitioner still had six charges pending against it, the Liquor Authority offered to settle this matter with petitioner, by providing a mere six-month suspension and imposing a $50,000 penalty upon petitioner, rather than a penalty comparable to the extreme sanction of revocation. (*See* Dec. 17, 2013 tr at 56, lines 20-23.) Further, revocation has dire consequences for the licensee in the future as the Authority may refuse to issue a license for two years after such revocation.[38]

Accordingly, given the lack of any previous violations, and absent any history of a prior enforcement action against petitioner, even had all of the charges been sustained upon judicial review, the extreme penalty of revocation of petitioner's farm winery license would be unnecessarily harsh, shockingly disproportionate to the offenses, and an abuse of discretion. While it appears that petitioner has made efforts to alleviate the alleged issues, including firing the former manager of the

---

38. As indicated, pursuant to Alcoholic Beverage Control Law § 113 (1), "[w]here a license for any premises licensed has been revoked, the liquor authority in its discretion may refuse to issue a license . . . for a period of two years after such revocation, for such licensed premises or for any part of the building containing such licensed premises and connected therewith."

winery, in an effort to appease the neighbors/Authority, even had this not occurred, revocation would still be an unnecessarily harsh penalty for a first-time infraction, given that no criminal charges were filed, much less sustained.

## III. Conclusion

While the court does not condone any conduct by petitioner which would be deemed disrespectful to the community where petitioner's winery is located, and in particular to the neighbors living adjacent to the winery, our nation's governing principles require that if licensed activities are to be restricted, sufficiently tailored laws, rules and/or regulations must be enacted by the regulating entity to provide the licensee with notice and guidance as to what is legally permissible and what is prohibited. In enacting such rules and regulations, which the Liquor Authority is required under the governing statutes to promulgate, it must engage in a public deliberative process, consistent with its own rules, which recognize and require that "the liquor authority shall promote the expansion and profitability of wine production and of tourism in New York, thereby promoting the conservation, production and enhancement of New York state agricultural lands." (Alcoholic Beverage Control Law § 76-a [4] [d].)

It is well recognized that the wine industry is important to the economy of New York State.[39] Given its significance to the economy, the proper promulgation of rules and regulations by the Liquor Authority would support this growing industry, while encouraging approved acceptable behavior, and preserving the integrity and the rights of the surrounding communities. In engaging in the public process of promulgating rules

---

**39.** For example, recently the Governor announced a $6 million commitment to promote New York's wine, beer, spirits and cider industry, "[which] continues to have a tremendous impact on the States economy . . . and employs more than 85,000 people." (Press Release, *Governor Cuomo Hosts Long Island Wine and Craft Beverage Tour and Congratulates Winery of the Year at Harvest Fest*, Aug. 23, 2014, available at http://www.governor.ny.gov/news/governor-cuomo-hosts-long-island-wine-and-craft-beverage-tour-and-congratulates-winery-year.) Governor Cuomo declared that "New York is now home to nearly 700 wineries, breweries, distilleries and cideries . . . and ranks third in the nation in wine and grape production . . . Since 2011, the number of farm wineries has risen nearly 50[%] from 195 to 291" as of August 2014. (*Id.*) Additionally, "[a]ccording to a recent study commissioned by the New York Wine and Grape Foundation, the full economic impact of New York grapes, grape juice and wine in 2012 was $4.8 billion for New York State." (*Id.*)

and regulations, the Authority would be required to solicit comments, and the public and the business community would be able to submit their concerns, which the Authority could balance in issuing its final rules. Such duly promulgated rules and regulations would then provide appropriate regulatory notice and guidance to the licensed businesses and provide a fair and proper enforcement review mechanism not subject to the arbitrary whims of the regulatory agency.

The fact that a license is a privilege and not a right does not permit the Authority to act with unfettered authority. As a regulatory body and arm of the government, it is bound to act within the confines of the law and to promulgate appropriate rules and regulations to provide guidance to the industry it regulates. Otherwise, without clear legal criteria—promulgated through rules and regulations—upon which to assess conduct, it is not inconceivable that licensees could be prosecuted based on the mere whim of the Authority[40] for outlandish "violations" that they had no notice of.[41]

As a regulatory body charged with enforcing the State's liquor laws, and demanding that its regulated licensees comply with the law, it is incumbent upon such governmental agency to follow the law as well. That respondents' failure to follow the State Administrative Procedure Act and its own rules and regulations is plainly evident from the transcript of the meeting, as discussed in the body of this decision, as it was undisputed by respondents (other than by general denial in their answer, without specifics). Respondents admitted by the comments made at the December 17, 2013 meeting that the decision to affirm the ALJ decision was based on new testimony elicited at such meeting, which was not part of the "record" as defined by 9 NYCRR 54.5, and which was not subjected to cross-examination by petitioner. This was in contravention of lawful procedures, violating petitioner's due process rights, and constituted an error of law.

---

**40.** As indicated previously, at the December 17, 2013 meeting before the Board, Chairman Rosen stated that "I think I know what a wine tasting is." (Dec. 17, 2013 tr at 47, lines 20-22.)

**41.** It is not entirely inconceivable that, without duly promulgated rules and regulations providing legal criteria for assessing conduct of wine tastings, a licensee could be prosecuted for serving pretzels with wine spritzers served in plastic cups, rather than cheese and wine served in wine glasses. Clear guidelines, in the form of duly promulgated rules and regulations, would avoid confusion and unnecessary/arbitrary enforcement actions.

Further, petitioner has not been charged with violating the only statutes governing farm wineries and wine tastings. (*See* Alcoholic Beverage Control Law § 76-a [3] [a], [c]; [4] [d].) Indeed, nor is it disputed that petitioner is in compliance with such governing statutes. For these reasons, charges five and six are dismissed. Additionally, charge two provides insufficient notice to defend in that it does not provide "a short and plain statement of [the] matters asserted," as required by State Administrative Procedure Act § 301 (2) (d), and is dismissed as it was an error of law, arbitrary and capricious and an abuse of discretion.

The extreme penalty of revocation, where no criminal charges have ever been filed, let alone sustained, and given that this is petitioner's first infraction/violation, is unnecessarily harsh, shockingly disproportionate to the offenses and an abuse of discretion. Nor has any farm winery ever previously had its license revoked.

If the town and the few residents of the town who have complained about the winery are indeed upset with the traffic, noise and "party atmosphere," they are free to pursue separately whatever remedies are available, pursuant to any local or zoning laws applicable, to bar any objectionable conduct. However, neither they, nor the Authority, have been able to point to any state statute, rule or regulation which provide a basis to bar the conduct complained of in the dismissed charges.

Accordingly, based upon the above, it is ordered and adjudged that the petition is granted to the extent that the determination and penalty imposed by the Board on December 17, 2013 is annulled and vacated, charges two, five and six of the amended notice of pleading (docket No. 1449-2012, case No. 82811) are dismissed, and the matter is remanded to the Board for further proceedings consistent with this decision, including the fixing of a lesser and more appropriate penalty; and it is further ordered that petitioner's request for a preliminary injunction is deemed moot.[42]

---

42. The court continues to encourage the parties to settle this matter amicably. "Discourage litigation. Persuade your neighbors to compromise whenever you can. Point out to them how the nominal winner is often a real loser—in fees, expenses, and waste of time. As a peacemaker the lawyer has a superior opportunity of being a good man[/woman]." (Abraham Lincoln, Notes for a Law Lecture [July 1, 1850], reprinted in 2 Collected Works of Abraham Lincoln 82 [Roy P. Basler ed 1953].)